**GENERAL MERCANTILE & HARD-WARE COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71-1448.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1972.

Decided June 5, 1972.

Rehearing and Rehearing En Banc Denied July 13, 1972.

Donald M. Witte, Clayton, Mo., for petitioner.

R. Bruce McLean, Atty., N. L. R. B., Washington, D. C., Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Atty., N. L. R. B., for respondent.

Before VAN OOSTERHOUT, Senior Circuit Judge, and MEHAFFY and STEPHENSON, Circuit Judges.

MEHAFFY, Circuit Judge.

General Mercantile & Hardware Company, hereinafter referred to as the Company, brings this petition for review of an order of the National Labor Relations Board. The Board has cross-applied for enforcement. The Board, in a decision reported at 191 NLRB No. 6, found that the Company violated § 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1), by interrogating employees about their union activities, threatening to close the plant because of employees' union activities, and threatening to discharge employees because of their union activities.

It found that the employer violated § 8(a) (3) of the Act, 29 U.S.C. § 158(a) (3) and (1) when it discharged three employees. There is no question of jurisdiction.

We hold that substantial evidence on the whole record supports the Board's findings only in part and accordingly grant enforcement in part.

The Company is a cooperative owned and operated by small hardware store operators with thirteen warehouse employees and seven office employees. It has an eleven-man board of directors. The board of directors hired William T. Poe as general manager in 1969.

On May 15, 1970 three warehouse employees, Roy Wayne Howard, Michael Long and Michael Walker, were called into a special meeting of the board of directors and questioned concerning their drinking of beer on the premises during working hours, their failure to follow the order of Tom Wilson, and a complaint by an office girl resulting from an incident in the lunchroom. The board of directors decided to retain the three employees on probation. The employees, however, were not notified of their probationary status.

The general manager, Mr. Poe, left on his annual vacation on July 12, 1970. In his absence, Roy Wayne Howard secured union literature and the three employees distributed it to some of the other warehouse employees. The record reveals no prior union activity at the Company. About three days later Roy Howard obtained union authorization cards which the three employees distributed. Apparently nothing further was done by the employees. Michael Walker left on his annual vacation and military leave on July 22, 1970, and Mr. Poe returned from his vacation on July 28, 1970.

The facts surrounding these events and leading up to the charges will be set out in connection with the discussion of the issues. The Board adopted the findings, conclusions and recommendations of the trial examiner.

*Employee Interrogation.*

The trial examiner found that on August 6, 1970 union agent Chrostowski went to the Company and talked to Mr. Poe. According to Mr. Poe, Mr. Chrostowski said he had signed up everybody in the warehouse. Mr. Chrostowski would not show Mr. Poe the cards and Mr. Poe expressed doubt that the cards existed. Mr. Poe decided to accept the option given him to wait for an election. After Mr. Chrostowski left, Mr. Poe talked to every warehouse employee who was present and asked whether the employee had signed a union card. According to Mr. Howard, Mr. Poe said that someone from the union had told him that everybody had signed cards authorizing the union to represent them and that Mr. Poe said he thought it was somebody off the street and wanted to find out if what he was talking about was true. In response to Mr. Poe's inquiry, Mr. Howard said he had signed a card but did not reply as to the source of the cards. The trial examiner found that Mr. Poe asked Mr. Long if he had signed a card. Mr. Long admitted that he had, but told Mr. Poe that he could not tell him who brought the cards. Two other employees, Ben Summers and Orville Edward Lammers, testified that in response to Mr. Poe's question they told him they had signed cards. The trial examiner found that shortly thereafter Mr. Howard was walking through the warehouse and came upon Orville Lammers and Tom Wilson talking, and heard Mr. Wilson say to Mr. Lammers that they were going to close the place down if it went union. It was found that as Mr. Howard walked by, Mr. Wilson turned and pointed his finger at Howard and said, "I'll see you walking the street."

The workweek at the Company is from Thursday until Wednesday. It was found that the checks are usually prepared on Thursday for the preceding week and distributed late Friday afternoon. On Friday, August 7, Howard and Long each received two paychecks and a notice which stated that as a result of taking beer without authorization from the lunchroom, drinking on the job and insubordination to the warehouse superintendent and assistant superintendent, your employment is terminated. Michael Walker, who had left on military leave on Wednesday, July 22, returned on August 8 and found the same discharge notice as had been given to Long and Howard.

The trial examiner found that in asking the employees whether they had signed union cards and inquiring of some the source of the cards, and by not giving the employees the guarantees and safeguards established in Struksnes Const. Co., 165 N.L.R.B. 1062, the Company invaded the employees' Section 7 rights and violated § 8(a) (1) of the Act.

Although this court adopted Struksnes in NLRB v. Harry F. Berggren & Sons, Inc., 406 F.2d 239 (8th Cir. 1969),[1] the decisions in this circuit on interrogation of employees continue to embody a necessity of anti-union animus. See NLRB v. Spotlight Co., 440 F.2d 928 (8th Cir. 1971); NLRB v. Little Rock Downtowner, Inc., 414 F.2d 1084 (8th Cir. 1969). See also NLRB v. Ralph Printing & Lithographing Co., 379 F.2d 687 (8th Cir. 1967); NLRB v. Protein Blenders, Inc., 215 F.2d 749 (8th Cir. 1954). In *Little Rock Downtowner, Inc.,* *supra,* 414 F.2d at 1093, we stated:

"It is well settled that an employer's interrogation of its employees is not unlawful *per se* unless conducted with such anti-union animus as to be coercive."

We find no evidence of anti-union animus here. The record reveals no prior labor union history at this Company. In that setting it reveals Mr. Poe's disbelief of Mr. Chrostowski's statement that all of the warehouse employees were signed up, and in fact some disbelief that Mr. Chrostowski was a labor repre-

1. Note Judge Blackmun's (now Mr. Justice Blackmun) dissent.

sentative and that there was any union activity. Mr. Poe expressed no opinion even inferentially against a union and there was no hint of reprisal. Accordingly, we find no violation of § 8(a) (1) by this poll.

*Supervisor Status.*

■■ The Company contends that it was not responsible for the comments of Mr. Wilson, alleging that he was not a supervisor of the Company. We find it unnecessary to decide whether Mr. Wilson was in fact a supervisor since the Company had at least given him the apparent authority of a supervisor by holding him out to the employees as such. The question of who is a supervisor is one of fact in which the Board has a large measure of discretion. NLRB v. Little Rock Downtowner, Inc., *supra.* We find that the Board's conclusion has warrant in the record and a reasonable basis in law. NLRB v. Little Rock Downtowner, Inc., *supra,* at 1089. Accordingly, we find that the Company violated § 8(a) (1) of the Act when the threats were made.

*Discharges.*

In finding that the discharges were for union activity, the trial examiner relied on the timing of the discharges and stated that he had discredited "to some extent" the testimony of various Company witnesses because of inconsistencies and contradictions in their testimony. He found that at the May 15 meeting the three discharged employees were questioned regarding the practice of drinking beer on the premises; that one of the employees was told that they were not going to be fired and were good employees; and that the three employees were not told they were on probation. He noted that General Counsel's case is based on a combination of the union activity of the three men, "the notification to the Company of the Union's status on August 6, followed immediately by inter-

rogation and coercion of the employees and the precipitate discharges the following day, August 7."

■ In order for a discharge to be discriminatory, there must be knowledge on the part of the employer of the employee's union activities and the burden of proof is upon General Counsel. Amyx Industries, Inc. v. NLRB, 457 F. 2d 904 (8th Cir. 1972).[2]

"[M]ere coincidence in time between the employee's union activities and his discharge does not raise an inference of knowledge on the part of the employer without some direct or persuasive circumstantial evidence of knowledge." 457 F.2d at 906.

In the present case the Company presented evidence that the decision to discharge the employees was for cause and occurred prior to the visit of the union representative on Thursday afternoon which was the time the Company became aware of union activity. The trial examiner discredited the Company's testimony which fixed the time of the Company's decision to discharge and the Company's testimony which fixed the time of preparing the employees' checks as prior to the visit of the union representative. He further discredited the Company's testimony that the discharges were for cause. We note that there is an abundance of evidence of problems and complaints with respect to these employees both before and after the May 15 meeting. After discrediting all of the Company's evidence on these points, the trial examiner stated: "All that is left is the union activity of the three, the discovery of it, and the immediate discharges in a context of unlawful interrogation and threats."

After closely reviewing the evidence, we find that the Company presented substantial credible evidence which fixed with sufficient certainty that the decision to discharge and the preparing of the final checks occurred prior to the

---

1. *Amyx Industries* is a unanimous per curiam opinion, the panel consisting of Judges Gibson, Heaney and Ross.

visit of the union representative and at a time when the Company had no knowledge of union activity. With respect to the decision to discharge, the members of the board of directors involved and the payroll clerk all placed the decision prior to the union representative's visit. Mr. Howard testified that the Company's practice was to prepare the payroll checks the first thing on Thursday morning. The trial examiner's predicted inconsistencies in the numbering of the payroll checks, relied upon to discredit the payroll clerk's testimony fixing both the date she was notified to prepare the checks and the time she prepared them, did not materialize when additional evidence was admitted in this court pursuant to a stipulation between the parties on oral argument. Instead the checks from the payroll ledger and Company receipts were consistent with and supported her testimony. We find that General Counsel has not met his burden of proof and the Board's findings are not based on substantial evidence as set out in Amyx Industries, Inc. v. NLRB, *supra*, at 907:

> "However, the Board's findings may not rest on 'suspicion, surmise, implications, or plainly incredible evidence.' and it is the function of the court to insure that these standards are observed. Universal Camera Corp. v. NLRB, 340 U.S. 474, 484 [71 S.Ct. 456, 95 L.Ed. 456] (1951). 'Substantial evidence is more than a scintilla *and must do more than create a suspicion of the existence of the fact sought to be established.* "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, 83 L.Ed. 660] (1939)."

Accordingly, enforcement is granted as to the supervisor issue and denied as to the interrogation and discharge issues.