[No. 56405–1. En Banc. April 4, 1991.]

Rick L. Beaman, *Appellant,* v. Yakima Valley Disposal, Inc., *Respondent.*

*Abeyta & Nelson, P.S.,* by *Rodney K. Nelson* and *Derek L. Sutton,* for appellant.

*Gary E. Lofland* and *Lofland & Associates,* for respondent.

DURHAM, J.—Rick Beaman brought a state law wrongful discharge action against his employer. The action was based on the terms of an implemented offer effectuated by the employer after the collective bargaining agreement expired and the parties were unable to reach a new agreement.[1] The trial court concluded that the action was preempted by federal labor law under the "potentially subject to" test of *San Diego Bldg. Trades Coun. v. Garmon,* 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959). Because the action properly belonged in federal court, it was dismissed. We affirm.

Beaman worked for Yakima Valley Disposal, Inc. (Valley) from 1978 until he was terminated on September 29, 1987. While Beaman was employed at Valley, the employees of Valley were represented by Teamsters Local 524 (Union). On March 1, 1986, the collective bargaining agreement reached in 1983 expired.[2] The parties were unable to reach a successor agreement and on June 1, 1986, Valley implemented its final offer.

---

[1]When an employer unilaterally puts a final offer into effect, it is commonly referred to as an implemented offer.

[2]In their briefs, Beaman states that the Union represented Valley employees during "most of the years" Beaman worked there and Valley states that there were a "series of collective bargaining agreements". However, the Clerk's Papers only refer to the agreement effective from March 1, 1983 through March 1, 1986.

Valley told Beaman that the implemented offer would be his new employment contract. The implemented offer provided that "[d]iscipline and discharge shall be for just cause." It also provided grievance procedures to be followed by any employee challenging a discharge as being imposed without just cause.

Beaman was discharged on September 29, 1987. He told his supervisors that he felt he had been unfairly discharged without just cause. He was not reinstated. On November 16, 1987, Beaman contacted a Union representative about the discharge. On November 18, a Union business representative wrote to Valley stating that the Union wished to meet with Valley to grieve the discharge pursuant to the terms of the implemented offer.

In a letter written December 3, 1987, Valley denied the Union's request for a meeting. The denial was based on Valley's assertions that the Union had abandoned its interest and that Beaman had failed to follow the grievance procedures.

On January 20, 1988, Beaman filed a complaint against Valley alleging "violation of promises of specific treatment in specific situations", discharge in violation of public policy, and claims for unpaid overtime. The first cause of action is based on *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984), a case in which this court modified the common law doctrine of employment at will. *Thompson* held:

> [I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson*, at 230.

On May 24, 1988, Valley moved to dismiss Beaman's first cause of action as being preempted by the Labor Management Relations Act, 1947, 29 U.S.C. § 141 *et seq*. In the alternative, Valley moved for partial summary judgment as to the first cause of action. The other causes of action were

not subject to the motions. On July 1, 1988, the trial court found that Beaman's first cause of action was preempted and granted Valley's motion to dismiss.

The trial court first noted that there was no evidence that the Union had been decertified or that Valley had withdrawn its recognition of the Union. Further, because there were Union contacts with the employer "right up until the end of 1987", the court said that it could not find there had been abandonment of interest by the Union. The court went on to say that resolution of the state cause of action would require resolution of issues within the province of the National Labor Relations Board (NLRB), including questions of impasse, the legal status, effect, and enforceability of the implemented offer, and the legal status of the Union. In granting Valley's motion to dismiss, the court stated that the "potentially subject to" test of *San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) required a ruling in Valley's favor.

An order of dismissal was entered on July 20, 1988 and Beaman appealed. The Court of Appeals certified the case to this court.[3]

We begin with a caveat. This opinion does not decide which party was right or wrong. The only issue before us is jurisdiction; that is, if the federal court or the state court should be the ultimate finder of fact. By ruling in either party's favor on the jurisdictional issue, we in no way indicate approval of that party's conduct in the underlying action. Any party in these circumstances can properly raise

---

[3]Because the trial court received matters outside the pleadings, Valley's CR 12(b) motion to dismiss for lack of jurisdiction is treated on review as a summary judgment motion and the facts are viewed in the light most favorable to Beaman. *Suleiman v. Lasher*, 48 Wn. App. 373, 376, 739 P.2d 712, *review denied*, 109 Wn.2d 1005 (1987); *Access Road Builders v. Christenson Elec. Contracting Eng'g Co.*, 19 Wn. App. 477, 481, 576 P.2d 71 (1978). Valley has the burden of showing at least an arguable case that state jurisdiction is preempted. *International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395, 90 L. Ed. 2d 389, 106 S. Ct. 1904 (1986). If Valley meets its burden, the burden shifts to Beaman to establish jurisdiction. *Access Road Builders*, at 481.

jurisdictional issues and our ruling on them is separate and distinct from assessing the factual merits of the case. Indeed, many facts relevant to the ultimate resolution of this case are not to be found in this record. Moreover, as the trial court noted, the important issues of impasse, the legality of the implemented offer, and the legal status of the Union itself are not for this court to decide. Any attempt to weigh the evidence on the limited record before us would not only be premature, but could easily lead to hasty and conjectural conclusions. By focusing on the *subject matter* of this case as opposed to the facts, it is possible to properly limit our inquiry and not stray into the province of the eventual finder of fact.

█ Our discussion begins with a brief overview of preemption as it has been applied to the area of labor law. Preemption of state law is a purely jurisdictional issue. *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 391, 90 L. Ed. 2d 389, 106 S. Ct. 1904 (1986). Congress' power to preempt state law is derived from the Supremacy Clause of article 6 of the federal constitution. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L. Ed. 23 (1824). Congressional power to legislate in the area of labor relations is long established. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 81 L. Ed. 893, 57 S. Ct. 615, 108 A.L.R. 1352 (1937). However, because "[t]he precise extent to which state law must be displaced . . . has never been determined by the Congress", the Supreme Court has said it "cannot declare pre–empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 289, 29 L. Ed. 2d 473, 91 S. Ct. 1909 (1971). Deciding if a state action is preempted by federal law requires review of congressional intent. *Garner v. Teamsters, Local Union 776,* 346 U.S. 485, 488, 98 L. Ed. 228, 74 S. Ct. 161 (1953). "'The purpose of Congress is the ultimate touchstone.'" *Malone v.*

*White Motor Corp.*, 435 U.S. 497, 504, 55 L. Ed. 2d 443, 98 S. Ct. 1185 (1978) (quoting *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103, 11 L. Ed. 2d 179, 84 S. Ct. 219 (1963)). Congressional intent to preempt, however, often is not clear.

> ■n such instances, the courts normally sustain local regulation of the same subject matter unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.

*Malone,* at 504.

In the area of labor law, three theories of preemption have developed: preemption based on section 301 of the National Labor Relations Act (NLRA); the *Machinists* doctrine, found in *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Empl. Relations Comm'n,* 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976); and the *Garmon* doctrine, found in *San Diego Bldg. Trades Coun. v. Garmon,* 359 U.S. 236, 242, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959).

The parties agree that section 301 preemption, which addresses "[s]uits for violation of contracts between an employer and a labor organization", 29 U.S.C. § 185(a), does not apply because there was no collective bargaining agreement in effect for the court to interpret. Valley argues that Beaman's claim is preempted under both the *Machinists* doctrine and the *Garmon* doctrine. Because we agree that Beaman's cause of action is preempted under *Garmon,* we need not decide the applicability of the *Machinists* doctrine.[4] Accordingly, our discussion is limited to the application of the *Garmon* doctrine.

■ Congress entrusted the administration of labor policy to a centralized administrative agency, with a specially constituted tribunal to insure uniform application of its

---

[4]The "crucial inquiry" under the *Machinists* doctrine is if Congress intentionally left the conduct involved unregulated, choosing instead to leave it "'to be controlled by the free play of economic forces.'" *Machinists,* at 140 (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 30 L. Ed. 2d 328, 92 S. Ct. 373 (1971)).

substantive rules and to avoid conflicts inherent in a multi-plicity of tribunals and a diversity of procedures. *Garmon,* at 242–43.

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. . . . Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. . . .
>
> At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.

(Footnote omitted.) *Garmon,* at 244–45.

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Garmon,* at 245.

> The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.

(Footnote omitted.) *Garmon,* at 246.[5] Thus, *Garmon* stands for the principle that potential, rather than actual, conflict is enough to warrant preemption.

*Garmon* went on to note two exceptions to this "potentially subject to" test. Preemption of state jurisdiction is not required "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act", *Garmon,* at 243, or "where the regulated conduct touch[es] interests so deeply rooted in local feeling and

---

[5]The National Labor Relations Act is a subchapter of the Labor Management Relations Act, 1947. The sections *Garmon* refers to are found at 29 U.S.C. §§ 157, 158.

responsibility that, in the absence of compelling congressional direction, [it] could not [be inferred] that Congress had deprived the States of the power to act." (Footnote omitted.) *Garmon,* at 244. The Supreme Court has "refused to apply the *Garmon* guidelines in a literal, mechanical fashion." (Footnote omitted.) *Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters,* 436 U.S. 180, 188, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978).

> "[T]he decision to pre–empt . . . state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies" of permitting the state court to proceed. *Vaca* v. *Sipes,* 386 U. S. 171, 180 [17 L. Ed. 2d 842, 87 S. Ct. 903 (1967)].

(Footnote omitted.) *Sears,* at 189.

Having set forth the parameters of the *Garmon* doctrine, we now turn to its application. Under *Garmon,* Beaman's cause of action must be preempted if it is even "potentially subject to" sections 7 or 8 of the NLRA. *Garmon,* at 245. Valley does not contend that section 7, which sets forth protected rights of employees, applies to this case. Rather, Valley asserts that preemption is required under section 8, which prohibits certain activities by employers or unions as unfair labor practices. Valley points specifically to sections 8(a)(5) and (d) of the NLRA which relate to collective bargaining. 29 U.S.C. § 158(a)(5), (d). Section 8(a)(5) makes it an unfair labor practice to refuse to bargain collectively with a representative union and section 8(d), in part, imposes a duty of good faith on the parties to the collective bargaining process.

Resolution of Beaman's first cause of action would necessarily touch on Valley's good faith bargaining and, furthermore, would require the court to determine several issues reserved to the primary jurisdiction of the NLRB. The court would have to determine if a valid impasse was reached, if the implemented offer was lawful, and, if not, what terms of the expired contract remain in effect, the legal status of the Union, and if Valley's refusal to deal with the Union was a violation of the NLRA.

There is no evidence in the record that a determination of impasse was ever requested or made. More importantly, the existence of an impasse does not end the party's obligation to bargain in good faith; the duty is merely suspended. 1 C. Morris, *Developing Labor Law* 636 (2d ed. 1983). Furthermore, during an impasse, an employer "may not take action disparaging to the collective bargaining process or amounting to a withdrawal of recognition of the union's representative status." (Footnote omitted.) 1 C. Morris, at 636.

Despite references in his brief to his "former" Union, Beaman acknowledges that determination of the Union's status is within the NLRB's primary jurisdiction. Thus, he does not directly challenge the trial court's statements regarding withdrawal, decertification and abandonment. Instead, he argues that the passage of time alone, absent active bargaining, should somehow allow him to disregard the Union's presence. Further, Beaman concedes that the issues of impasse and valid implementation lie within the primary jurisdiction of the NLRB. Most importantly, he concedes that the issues involving the validity of the terms of the expired contract and the effect of Valley's refusal to deal with the Union also lie within the NLRB's primary jurisdiction. Nevertheless, he argues that preemption is not required because these issues need not be reached to resolve his claim.

Beaman makes three arguments in support of this contention. First, he argues that he has an individual contract with Valley, which exists totally apart from the expired collective bargaining agreement. Next, he argues that the controversy to be presented to the state court is not identical to that which could be presented to the NLRB. Finally, he argues that his cause of action is not preempted because it is based on a law of general applicability.

## INDIVIDUAL CONTRACT

■ Beaman's argument that he has an individual contract with Valley hurts, rather than helps, him. It is difficult to imagine an action more disparaging to the collective bargaining process than an employer entering into new individual employment contracts with employees during an impasse. Moreover, bypassing the Union in this fashion belies an employer's recognition of the Union's representative status. If Valley did enter into such a contract with Beaman after impasse, arguably Valley committed an unfair labor practice. This is not to say that individual contracts can never exist where a collective bargaining agreement is, or has been, in place. However, Valley was not free to enter into such contracts in this case given its ongoing obligation to the collective bargaining process. *Cf. Caterpillar Inc. v. Williams,* 482 U.S. 386, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987); *Bullock v. Automobile Club,* 432 Mich. 472, 444 N.W.2d 114 (1989); *Roberts v. Automobile Club,* 138 Mich. App. 488, 360 N.W.2d 224 (1984), *cert. denied,* 479 U.S. 889 (1986).

The dissent agrees that individual contracts cannot be used to defeat the policies of the NLRA. Dissent, at 722 (citing *J.I. Case Co. v. NLRB,* 321 U.S. 332, 337, 88 L. Ed. 762, 64 S. Ct. 576 (1944)). However, the dissent relies on *J.I. Case* to argue that Beaman's contract claim cannot create a conflict with those policies. *J.I. Case* does not support that position. There, the employees had entered into valid individual contracts with their employer prior to the union petitioning for certification as the exclusive bargaining representative. *J.I. Case,* at 333. As the dissent points out, the court "preserved the employees' right to recover for breaches of individual contracts *unless those contracts were superseded by a collective bargaining agreement."* (Italics ours.) Dissent, at 722–23. There is absolutely no evidence that Beaman had any contract with Valley prior to, or beyond the terms of, the expired collective bargaining

agreement. Thus, the dissent's own reading of *J.I. Case* distinguishes it from the present case.[6]

Beaman next relies on language in *Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters,* 436 U.S. 180, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978) and *Belknap, Inc. v. Hale,* 463 U.S. 491, 77 L. Ed. 2d 798, 103 S. Ct. 3172 (1983) to argue that his state action is not preempted because the controversy to be presented to the state court is not identical to that which could be presented to the NLRB. In so doing, Beaman disregards threshold determinations that must be made and oversimplifies the Court's reasoning, giving the language too literal and narrow a reading by taking specific language out of context. Furthermore, both cases are readily distinguished from the present case.

In *Sears,* the Supreme Court held that a state trespass action, which was brought by Sears against picketers who refused to leave Sears' property, was not preempted by federal labor law. The picketers, who were members of a carpenters union, were not Sears' employees and Sears did not have a collective bargaining agreement with the union. Sears was being picketed for using non–union carpenters. Sears sought, and was granted, an injunction removing the pickets to the public sidewalk. *Sears,* at 183.

In holding that the state action was not preempted, the Supreme Court noted that the state action, which was limited by the scope of the injunction, was concerned only with the location of the picketing. In contrast, any arguable unfair practice determination by the NLRB would focus on the objective of the picketing. *Sears,* at 198. The Court noted that "'the decision to pre–empt . . . state court

---

[6]Since oral argument, Beaman's counsel has submitted *Campbell v. Lockheed Shipbuilding & Constr. Co.,* 56 Wn. App. 641, 785 P.2d 459 (1990), *review denied,* 116 Wn.2d 1004 (1991), as additional authority. *Campbell's* holding that a state breach of contract action for wrongful discharge was not preempted under *Garmon* does not change our analysis. There, plaintiffs were alleging breach of individual apprenticeship agreements, the validity of which was not questioned.

jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies'". *Sears,* at 189 (quoting *Vaca v. Sipes,* 386 U.S. 171, 180, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967)). Thus, the "critical inquiry" under *Garmon* is whether controversy presented to the state court is identical with that which could be presented to the NLRB. *Sears,* at 197.

Beaman contends that the issues here are not identical because the state court need only decide if Valley complied with the terms of the implemented offer in discharging him. He totally disregards the threshold determination that must be made. His claim is directly based on either an individual contract, the existence of which is arguably an unfair labor practice, or an implemented offer, the validity of which has never been determined. Beaman concedes that the questions of unfair labor practices and the validity of the implemented offer are within the primary jurisdiction of the NLRB.

Further, Beaman's focus on the Court's use of the word "identical" disregards the Court's concern with the *interests* being asserted and the effect on labor policies. Beaman does not adequately address these interests. He acknowledges that section 301 preemption would apply to this case if there were a current collective bargaining agreement in effect to be interpreted. Yet, he asks this court to hold that if an agreement is not in effect because of a breakdown in negotiation, that somehow the NLRB's interest in the process is extinguished. This we will not do. The NLRB has a strong interest in any action that interferes with the relationship between union employees and their employer, especially as it relates to the collective bargaining process.

Moreover, *Sears* is readily distinguished from the present case. Beaman was employed by Valley and had been covered by the expired collective bargaining agreement. In contrast, there was no pre–existing management–labor relationship between Sears and the union picketers. There

was not even an employer–employee relationship between them.[7]

*Belknap* is also readily distinguished from the present case. There, the Court was called on to decide if the NLRA preempts a misrepresentation and breach of contract suit brought in state court by strike replacements who were displaced by reinstated strikers. The replacements had been offered, and had accepted, permanent jobs. They were told that they would not be fired to accommodate returning strikers. The Court held that the action was not preempted under *Garmon* because the NLRB would focus on the rights of returning strikers, while the state interest was in protecting the rights of the replacements, whom the Court clearly viewed as third parties not directly involved in the ongoing labor dispute between the strikers and the employer. *Belknap,* at 510. As an employee admittedly covered by a series of collective bargaining agreements, Beaman cannot be characterized as a third party. Nor does a breakdown in negotiations for a successor agreement place him in a position analogous to the replacement workers in *Belknap.* Those workers based their breach of contract claim on the employer's promise of permanent employment, not a current or expired collective bargaining agreement.

Beaman cites *Linn v. United Plant Guard Workers, Local 114,* 383 U.S. 53, 63, 15 L. Ed. 2d 582, 86 S. Ct. 657 (1966) to support the assertion that "[s]hould Mr. Beaman's claim be preempted, '[t]he Board can award no damages, impose no penalty, or give any other relief' to Mr. Beaman." Brief of Appellant, at 17 (quoting *Linn,* at 63). Beaman does not say why he has not, or cannot, look to the NLRB for relief. More importantly, the fact that a given

---

[7]Beaman also cites *Sears* to support his assertion that preemption is only justified on the basis of interference with protected activity when the aggrieved party has reasonable opportunity to invoke the NLRB's jurisdiction himself. However, neither Beaman nor Valley contend that section 7 protected activities are implicated in this action.

remedy cannot be granted by the NLRB does not necessarily mean his claim is not preempted. "[R]emedies form an ingredient of any integrated scheme of regulation[;] to allow the State to grant a remedy here [damages] which has been withheld from the National Labor Relations Board only accentuates the danger of conflict." *San Diego Bldg. Trades Coun. v. Garmon,* 359 U.S. 236, 247, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959).

## LAW OF GENERAL APPLICABILITY

Finally, Beaman argues that his cause of action is not preempted because it is based on a law of general applicability. In support of this argument, Beaman cites a law review article in which Professor Cox contends that Congress intended only to preempt laws regulating collective bargaining activity, and not laws of general applicability. Cox, *Labor Law Preemption Revisited,* 85 Harv. L. Rev. 1337 (1972). Beaman then asserts that the Supreme Court adopted Cox's analysis in *New York Tel. Co. v. New York State Dep't of Labor,* 440 U.S. 519, 59 L. Ed. 2d 553, 99 S. Ct. 1328 (1979). In *New York Tel.,* the Court upheld a statute which provided unemployment benefits to strikers. Beaman argues that his claim should not be preempted because, like the unemployment benefits granted in *New York Tel.,* his claim is based on a law of general applicability. Beaman's reliance on *New York Tel.* is misplaced for three reasons.

█ First, *New York Tel.* referred to, but did not specifically adopt, the Cox test. Second, general applicability of a statute or law is not sufficient, in and of itself, to exempt it from preemption. *Farmer v. United Bhd. of Carpenters, Local 25,* 430 U.S. 290, 300, 51 L. Ed. 2d 338, 97 S. Ct. 1056 (1977); *New York Tel.,* at 533; *Garmon,* at 244. Third, in *New York Tel.,* the Court relied on the legislative histories of the NLRA and the Social Security Act, which were enacted the same year, to conclude that Congress had not

intended the NLRA to preempt state unemployment compensation laws. *New York Tel.*, at 527.[8]

Beaman makes no attempt to establish that Congress did not intend the NLRA to preempt state causes of action based on implemented offers. Nor does he address the potential impact of such a state action on federal interests. He simply states that *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) states a law of general applicability; therefore, his claim is not preempted. This is not sufficient to overcome preemption.

In sum, Valley has met its burden of showing at least an arguable case that the state action is preempted. Thus, the burden shifts to Beaman to establish jurisdiction. He has not met this burden. Therefore, we affirm the trial court's dismissal of Beaman's action as preempted by federal law under the "potentially subject to" test of *San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959).

BRACHTENBACH, DOLLIVER, ANDERSEN, and SMITH, JJ., and CALLOW, J. Pro Tem., concur.

GUY, J. (dissenting)—Resolution of Beaman's contract claim does not require determination of issues within the jurisdiction of the National Labor Relations Board (the Board). Accordingly, Supreme Court precedent compels the

---

[8]Immediately after stating that *New York Tel.* adopted the Cox analysis, Beaman states that *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) "held [that] judges can determine questions of state law involving labor–management relations provided they do not require construing collective–bargaining agreements." Brief of Appellant, at 20. That is a misstatement of the case. In *Lingle,* the Court was asked to decide whether an employee covered by a collective bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state law remedy for retaliatory discharge. *Lingle,* at 401–02. The Court held that the claim was not preempted by section 301 because the state law claim could be resolved without interpreting the agreement itself. *Lingle,* at 409–10. The Court went on to say that only preemption under section 301 was at issue in the case and the claim might still be preempted under either *Garmon* or the *Machinists* doctrine. *Lingle,* at 409 n.8.

conclusion that the National Labor Relations Act (NLRA) does not preempt Beaman's contract claim.

As the majority points out, Yakima Valley Disposal refused to allow Beaman to grieve his discharge, in part because it alleged the union had abandoned its interest in representing the workers. Yet, Valley now asserts the NLRA preempts Beaman's contract claim. This could be interpreted as allowing Valley to have it both ways, which at a minimum is patently unfair to Beaman. More significantly, there is no precedent that would support finding preemption on the basis of the record before this court.

SECTION 301

Section 301 of the Labor Management Relations Act, 1947 provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . ..

29 U.S.C. § 185(a) (1988).

This provision has been interpreted to preempt inconsistent local rules in order to provide uniformity. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985) (citing *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957)) and *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962)). It has been construed to govern claims founded directly on rights created by collective bargaining agreements and claims "'substantially dependent on analysis of a collective–bargaining agreement.'" *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987) (quoting *International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 95 L. Ed. 2d 791, 107 S. Ct. 2161 (1987)).

However, section 301 does not provide the Board with general jurisdiction over all breaches of collective bargaining agreements. *NLRB v. C&C Plywood Corp.,* 385 U.S. 421, 427, 17 L. Ed. 2d 486, 87 S. Ct. 559 (1967). Most importantly, Congress rejected a bill that would have given

the Board jurisdiction over all such breaches. *C&C Plywood,* at 427. Thus, while the Board retains authority to interpret unfair labor charges, it has no jurisdiction to determine individual rights under a collective bargaining agreement. *NLRB v. C&C Plywood Corp., supra.*

Moreover, section 301 says nothing about the content or validity of individual employment contracts. *Caterpillar,* at 394. Such contracts are outside the jurisdiction of the Board. *J.I. Case Co. v. NLRB,* 321 U.S. 332, 340, 88 L. Ed. 762, 64 S. Ct. 576 (1944). Consequently, an individual covered by a collective bargaining agreement may under state law assert legal rights independent of that agreement, so long as the contract relied upon is not a collective bargaining agreement and provided that application of state law does not require the interpretation of a collective bargaining agreement. *Caterpillar,* at 396 (citing *J.I. Case,* at 339); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988).

Since interpretation of individual contract rights lies outside the jurisdiction of the Board even where a collective bargaining agreement is in force, it follows that state courts have the jurisdiction to determine individual contract rights where no such agreement exists. It is undisputed that no collective bargaining agreement exists in this case.

NO UNFAIR LABOR PRACTICES/NO JURISDICTION

In Beaman's case it is undisputed that no collective bargaining agreement exists and that his claim is premised upon an individual contract that does not require interpretation of a collective bargaining agreement. The majority, however, concludes that Beaman's claim is preempted because resolution of the alleged breach might involve discussion of issues that may have occurred in the failed collective bargaining process between Valley and the union. The majority, however, does not explain how such discussion would relate to determination of Beaman's contract claim. It incorrectly concludes that there are potential unfair labor practices warranting preemption.

Initially, a contract violation is not of itself an unfair labor practice, even where the contract is a collective bargaining agreement. 1 C. Morris, *Developing Labor Law* 909 (2d ed. 1983); *NLRB v. Los Angeles Yuma Freight Lines,* 446 F.2d 210 (9th Cir. 1971); *Independent Petroleum Workers v. Esso Standard Oil Co.,* 235 F.2d 401, 405 (3d Cir. 1956); *NLRB v. Pennwoven, Inc.,* 194 F.2d 521, 524 (3d Cir. 1952); *see Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 513, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962). Beaman alleges breach of a promise of specific treatment under his employment contract and nothing more. The majority fails to show how this alleged breach in any way resembles an unfair labor practice cognizable by the Board.

Further, the majority maintains that under the "arguably subject to" test of *Garmon,* there are possible issues as to impasse, good faith bargaining, the legal status of the union, Valley's refusal to deal with the union, and the status of the final implemented offer that arguably would be subject to the jurisdiction of the Board. *See generally San Diego Bldg. Trades Coun. v. Garmon,* 359 U.S. 236, 244–45, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959); majority opinion, at 705–06. The majority does not provide specific facts demonstrating conduct on the part of either the union or Valley that would constitute a cognizable unfair labor practice under section 8 of the NLRA. In those cases relied upon by the majority, the courts have identified the type of conduct comprising the alleged unfair labor practice or otherwise protected labor activity warranting preemption. *See, e.g., San Diego Bldg. Trades Coun. v. Garmon, supra* (union picketing of employer that formed basis of state court injunction might constitute unfair labor practice under section 8 or comprise protected concerted activity under section 7 thereby justifying preemption).

In Beaman's case, the majority fails to show what conduct might constitute bad faith impasse or that the terms of the final implemented offer varied from the expired collective bargaining agreement and were unilaterally imposed by Valley. *See NLRB v. Katz,* 369 U.S. 736, 8 L. Ed. 2d

230, 82 S. Ct. 1107 (1962) (unilateral change in employment conditions by employer violates the duty to "bargain collectively" imposed by § 8(a)(5) of the NLRA).

To the contrary, the record discloses that the terms of the final implemented offer do not differ notably from the expired collective bargaining agreement, thereby leading to the conclusion that there were no *Katz* unilateral changes by Valley and, thus, no unfair labor practice. Compare Clerk's Papers, at 29 with Clerk's Papers, at 91–92. Perhaps more significantly, although a party to the expired collective bargaining agreement and the final implemented offer, Valley fails to allege any specific unfair labor activity on the union's part.

In discussing the facts necessary to show that conduct is arguably prohibited by the NLRA, the Supreme Court has held "that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor." *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 395, 90 L. Ed. 2d 389, 106 S. Ct. 1904 (1986). With the record barren of both employer and union activity upon which to infer an unfair labor practice occurred, it is not possible to conclude that pre-emption is justified premised solely upon Valley's factually unsupported assertions that issues as to impasse, good faith bargaining, and the final implemented offer might arise.

Moreover, 29 U.S.C. § 160(b) sets forth a statute of limitation for filing unfair labor practices with the Board. *See also DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 169, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983). Section 160(b) provides in relevant part:

> Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board . . . shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect . . . *Provided,* That no complaint shall issue based upon any unfair labor practice *occurring more than six months prior* to the filing of the charge with the Board . . ..

(Some italics mine.)

The statute begins to run at the time the plaintiff either was aware of or should have been aware of the injury. *Farr v. H.K. Porter Co.*, 727 F.2d 502, 505 (5th Cir. 1984) (citing *Benson v. General Motors Corp.*, 716 F.2d 862, 864 (11th Cir. 1983)). *See also DelCostello v. International Bhd. of Teamsters, supra.* Of those potential violations raised by Valley, the final offer implemented June 1, 1986, would be the last possible unfair labor practice in the sequential chain of the collective bargaining process. Assuming there were problems with the final offer, the statute of limitation would begin to accrue at the date of implementation. To date, neither the union nor Valley has filed any unfair labor charges and are now time barred from doing so.

While the Board's jurisdiction is not necessarily displaced by failure to file within the statute of limitation, both the union's and Valley's failure to do so supports an inference that the violations Valley suggests may have occurred do not in fact exist. *See Guss v. Utah Labor Relations Bd.*, 353 U.S. 1, 1 L. Ed. 2d 601, 77 S. Ct. 598 (1957); *Amalgamated Meat Cutters & Butcher Workmen v. Fairlawn Meats, Inc.*, 353 U.S. 20, 1 L. Ed. 2d 613, 77 S. Ct. 604 (1957).

Thus, Beaman's claim that the Board cannot provide him with the relief he seeks is correct. Not only is the Board time barred from hearing his grievance, but the Supreme Court has stated that "the injury" involved here, breach of promise with respect to employment, "has no relevance to the Board's function" and that the "Board can award no damages, impose no penalty, or give any other relief". *Belknap, Inc. v. Hale*, 463 U.S. 491, 511, 77 L. Ed. 2d 798, 103 S. Ct. 3172 (1983) (citing *Linn v. United Plant Guard Workers*, 383 U.S. 53, 63, 15 L. Ed. 2d 582, 86 S. Ct. 657 (1966)).

The majority suggests that the unavailability of relief is irrelevant, stating: "[T]he fact that a given remedy cannot be granted by the NLRB does not necessarily mean his claim is not preempted." Majority opinion, at 710–11. To support this assertion, it refers to *Garmon,* which held:

"[S]ince remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict." *Garmon*, at 247; see also majority opinion, at 709.

However, in *Garmon*, unlike Beaman's case, the Board determined it had jurisdiction over the matter, but withheld it. Nowhere did the Court suggest that the preemption announced in *Garmon* applied where the Board had no jurisdiction to begin with. To hold otherwise would contradict the rationale that prompted *Garmon*, which is recognition of the need for uniform interpretation of sections 7 and 8 of the NLRA. In Beaman's case, unlike *Garmon*, the majority fails to identify any cognizable unfair labor practices. Therefore, the Board has no jurisdiction.

### GARMON PREEMPTION

Assuming the majority is correct that there may be issues constituting unfair labor practices the Board should decide, *Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters*, 436 U.S. 180, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978) and *Belknap, Inc. v. Hale, supra,* compel the conclusion that Beaman's cause of action is not preempted under *Garmon* even where the unfair labor practice violations fall within section 8 of the NLRA. As in those cases, the relationship between Beaman's claim and any potential violation of section 8 is too attenuated to justify preemption.

*Garmon* preemption protects the primary jurisdiction of the Board in determining what constitutes an unfair labor practice under the NLRA. Majority opinion, at 704 (quoting *Garmon*, at 244–45). Under *Garmon*, where an activity is "arguably subject to" section 7 or 8, state action is preempted by the exclusive jurisdiction of the Board. *Garmon*, at 245. In interpreting the scope of this phrase, the Supreme Court has stated:

"Our cases indicate . . . that *inflexible* application of the [*Garmon*] doctrine *is to be avoided,* especially where the State has a substantial interest in regulation of the conduct

at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme."

(Italics mine.) *Sears,* at 188 (quoting *Farmer v. United Bhd. of Carpenters & Joiners,* 430 U.S. 290, 302, 51 L. Ed. 2d 338, 97 S. Ct. 1056 (1977)).

Thus, the Court has refused to apply *Garmon* in a literal, mechanical fashion and instead has determined whether preemption is appropriate by focusing upon the nature of the particular interest being asserted and the effect upon the administration of national labor policies of permitting the state court to proceed. *Sears,* at 188–89 (citing *Vaca v. Sipes,* 386 U.S. 171, 180, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967)).

The *Sears* Court held that the touchstone or *"critical inquiry"* under *Garmon* is not whether the State is enforcing a law relating specifically to labor relations or one of general application, but whether the controversy presented to the state court is *"identical"* to or different from that which could have been presented to the Board. *Sears,* at 197; see also majority opinion, at 708. It is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid. *Sears,* at 197.

Thus, accepting arguendo Valley's assertion that violations of sections 8(a)(5) or (d) may have occurred, preemption is not warranted unless the resulting unfair labor controversy was identical to or at least roughly similar to Beaman's individual breach of contract claim. In that regard, the majority concludes that resolution of Beaman's contract claim might involve discussion of potential violations of sections 8(a)(5) and 8(d) of the NLRA. Those sections govern the collective bargaining process between employer and union. They impose a mandatory duty upon the employer to meet with and bargain in good faith with a representative of the union. *See* 29 U.S.C. § 158(a)(5), (d); majority opinion, at 705–06.

Consequently, to justify preemption under *Garmon,* Beaman's breach of contract claim must be identical to the issues of impasse, good faith bargaining, and the status of the final offer that would be reserved for the Board. The majority not only fails to show that the controversy would be identical, it fails to show that there is a controversy.

Beaman's claim is based upon *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984). See majority opinion, at 700. Under *Thompson,* to sustain his claim, Beaman must establish a promise *of specific treatment in specific situations,* that the promise induced the employee to remain on the job and not actively seek other employment, and that the promise was breached. *Thompson,* at 230. Because consideration by the individual employee is required to establish a contract under *Thompson,* unilateral implementation of an offer alone cannot establish a right based upon the contract.

Given these considerations, a state court would be concerned with whether there was a valid employment contract between Valley and Beaman under *Thompson* and whether Valley breached that contract. In contrast, the Board would be concerned with whether the union and Valley collectively bargained in good faith, whether impasse was reached in good faith, and whether the final implemented offer contained *Katz* unilateral changes. Consideration of one is wholly irrelevant to the resolution of the other. Thus, preemption is inappropriate.

Moreover, *Belknap* supports the conclusion that preemption is not warranted. *See Belknap, Inc. v. Hale,* 463 U.S. 491, 77 L. Ed. 2d 798, 103 S. Ct. 3172 (1983). In that case, the Supreme Court upheld state court adjudication of a claim brought by an employee alleging wrongful discharge. The facts of *Belknap* support preemption far more strongly than do the facts in Beaman's case; nevertheless, the Court found no preemption.

In *Belknap,* the union engaged in a strike after impasse was reached during the renegotiation of an expired collective bargaining agreement. The employer hired replacement

workers and told them that the jobs were permanent positions. The strike was subsequently settled and the employer fired some of the replacement workers to make room for returning strikers. *Belknap,* at 494–96. Under the provisions of the NLRA, the employer is obligated to reinstate employees who strike to protest unfair labor practices. *Belknap,* at 508 (citing *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 100 L. Ed. 2d 309, 76 S. Ct. 349 (1956)). Thus, because the strike could be characterized as one to protest unfair labor practices, the employer arguably had to fire the replacement workers to avoid unfair labor charges. *Belknap,* at 508; 528 (Brennan, J., dissenting). (It should be noted that the majority did not disagree with this statement. *See Belknap,* at 508.)

The fired replacement workers sought damages in state court alleging misrepresentation and breach of contract. *Belknap,* at 496–97. The employer argued that resolution of the claims would necessarily involve section 8 of the NLRA and, thus, *Garmon* preemption should apply.

The Supreme Court disagreed. Reasoning that the issues arising under section 8 and the breach of contract claims were not identical, the Court found no preemption, even though success in state court would ultimately result in damage awards for the firing of the employees, which was arguably compelled by the NLRA. *Belknap,* at 510. As in *Sears,* the Court identified the "identical controversy" inquiry as the crucial factor, with the results of that inquiry determining no preemption. *Belknap,* at 510.

As in *Belknap* and *Sears,* allowing Beaman to proceed in state court would not interfere with the jurisdiction of the Board. An award of damages for breach of contract would not in any way preclude the Board's determination of potential unfair labor practices. Allowing employees to benefit from the terms of individual contracts does not conflict with the need to protect the collective bargaining process. *J.I. Case Co. v. NLRB, supra.* The Supreme Court has explicitly held that such individual contracts may exist

and be enforceable in the collective bargaining context, stating:

> Men may continue work after a collective agreement expires and, despite negotiation in good faith, the negotiation may be deadlocked or delayed; in the interim express or implied individual agreements may be held to govern.

*J.I. Case,* at 337.

It is important to note that such contracts could not justify a refusal to bargain collectively, nor could they supersede the terms of an existing collective bargaining agreement. *J.I. Case,* at 339. In short, individual contracts may not be used to defeat the policies of the NLRA. *J.I. Case,* at 337. Since no collective bargaining agreement exists, however, Beaman's contract claim cannot create such a conflict.

In *J.I. Case,* the J.I. Case Company had entered into individual employment contracts with its employees. Subsequently, after the contracts were in effect, the union was certified as the exclusive bargaining representative of the employees. It asked the company to bargain; however, Case refused. *J.I. Case,* at 333–34. The Board found this refusal to bargain collectively constituted an unfair labor practice. The Supreme Court agreed; but it modified the Board's order so that the contracts would not in any way limit the individual employee's right to bargain collectively. *J.I. Case,* at 341. In doing so, the Court carefully preserved the employees' right to recover for breaches of individual contracts unless those contracts were superseded by a collective bargaining agreement. *J.I. Case,* at 342.

Thus, *J.I. Case* not only permits an employee to seek damages for breach of promises made while collective bargaining negotiations are ensuing, it allows the employee to proceed in state court even where the employer committed an unfair labor practice in making the promise.

Moreover, Beaman's claim is of peripheral concern to the NLRA. *See Belknap,* at 509. Washington's interest in applying *Thompson* as a method of providing a remedy to its citizens for breach of contract outweighs the Board's

discrete concern with unfair labor practices. *Belknap,* at 512.

Finally, in the wake of *Belknap,* the Michigan Court of Appeals found no preemption of a wrongful discharge claim based on a unilateral contract theory. *See Roberts v. Automobile Club,* 138 Mich. App. 488, 360 N.W.2d 224 (1984), *cert. denied,* 479 U.S. 889 (1986). Like Beaman, Roberts based his cause of action on a Michigan case which, like *Thompson,* modifies the employment–at–will doctrine through a unilateral contract theory. *Roberts,* at 491 (citing *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980)).

*Roberts* squarely rejects the argument that sections 8(a)(5) and 8(d) preempt a wrongful discharge claim made under *Garmon,* the precise claim at issue here. The Michigan court recognized that in resolving Roberts' claim, the state court would determine whether there was an implied employment contract and whether it was breached. *Roberts,* at 497. In contrast, it noted that the Board's focus would involve whether the defendants had bargained in good faith. It further concluded, in accordance with *Belknap,* that the states' interest in adjudicating contractual disputes outweighed any possible interference with the federal labor laws. *Roberts,* at 497.

Not only does the majority summarily dismiss *Roberts,* in which the issues are substantially similar to the issues in this case, it fails to apply properly the *Sears–Belknap* "identical controversy" test which the Supreme Court has identified as critical. It attempts to distinguish *Sears* by suggesting that there was no management–labor relationship between Sears and the union picketers. Majority opinion, at 709–10. It incorrectly contrasts this alleged lack of relationship to that between Valley and Beaman and concludes that because a management–labor relationship exists between them, *Sears* is distinguishable. Contrary to the majority's position, the *Sears* Court specifically stated that sections 7, 8(b)(4)(D) and 8(b)(7)(C) arguably applied to the picketers, thus treating the relationship as one between

management and labor. Further, union attempts to secure employer compliance with prevailing wage standards, to gain recognition, and to force the employer to hire union members are all aspects of labor–management relations. *See Sears*, at 185–87.

The majority also points out that the replacement workers in *Belknap* did not base their argument on a current or expired agreement between the employer and the union. Significantly, neither does Beaman. Rather, he bases his claim upon his supervisor's promise to him. Majority opinion, at 700.

## CONCLUSION

In reaching its conclusion of preemption, the majority applies *Garmon* in a literal, mechanical fashion and distinguishes binding precedent on untenable grounds. In doing so, it fails to analyze the nature of the claims being asserted and the resulting effect upon the administration of the national labor policies. Further, the majority fails to identify what unfair labor practices occurred. Nor does it compare the alleged unfair practices with the unilateral contract claim to determine if, in fact, a conflict will result.

In sum, other than reliance upon a factually unsupported statement by Valley that unfair labor practices may have occurred, there is no support for a finding of preemption. Consequently, I would reverse the trial court and remand for further proceedings on Beaman's implied contract claim under *Thompson*.

DORE, C.J., and UTTER, J., concur with GUY, J.