**KCW FURNITURE, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 80–7063.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 1980.

Decided Dec. 18, 1980.

*Congressional Influence on Administrative Agencies*, 73 Nw.U.L.Rev. 931 (1978).

Eugene R. Nielson, Lane, Powell, Moss & Miller, Seattle, Wash., for petitioner.

Elliott Moore, Washington, D. C., on brief; Penny A. Pilzer, N.L.R.B., Washington, D. C., for respondent.

Before DUNIWAY and TRASK, Circuit Judges, and JAMESON,* District Judge.

JAMESON, Senior District Judge:

This petition for review of an order of the National Labor Relations Board (NLRB) and cross-application for enforcement of the order involve the construction of the "Duration and Renewal" provision of a collective-bargaining agreement between Petitioner, KCW Furniture, Inc. (KCW), and Local 174 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union).

KCW and the Union entered into an agreement on November 20, 1975, which was effective from April 1, 1974 until April 1, 1977. The agreement contained the following "Duration and Renewal" provision:

THIS AGREEMENT between KCW FURNITURE, INC. and Local Union # 174 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, shall be effective commencing April 1, 1974, and shall continue in force and effect through April 1, 1977, and also thereafter, on a year to year basis, by automatic renewal. Provided however, for the purpose of negotiating alterations in wages and other terms and conditions of employment, either party may open this Agreement or any contract effectuated through automatic renewal by giving written "Notice of Opening" not later than sixty (60) days prior to the expiration date. "Notice of Opening" is in nowise intended by the parties as a termination of this Agreement or any annual contract effectuated

through automatic renewal nor as forestalling automatic renewal as herein provided. The parties reserve the right to economic recourse in negotiations; except during the interval between the giving of Notice of Opening and the expiration date.

Except by mutual written agreement, termination of this Agreement or any annual contract effectuated through automatic renewal, must, to the exclusion of all other methods, be perfected by giving written "Notice of Termination" not later than sixty (60) nor more than ninety (90) days prior to the expiration date, whereupon the contract shall, on its expiration date, terminate. Effective termination eliminates automatic renewal.

Any "Notice of Opening" or "Notice of Termination" given within sixty (60) days of any expiration date shall be absolutely null and void and completely ineffective for all purposes.

On January 12, 1977, the Union sent KCW a letter which stated:

This is 174's notice of opening of the Labor Agreement, to negotiate wages, hours and other terms and conditions of employment.

By letter dated August 17, 1977, KCW sent Local 174 a written proposal for a collective bargaining agreement "... to succeed the one which expired April 1, 1977." A negotiating session between KCW and the Union took place on August 22, 1977. The Union negotiators made a complete contract proposal and insisted that any agreement ultimately entered into be retroactive to April 1, 1977. The meeting was then adjourned so that the parties might study each other's proposals. A second bargaining session was held on September 30, 1977. Nothing was resolved and the parties adjourned after agreeing that impasse had been reached. KCW then implemented its final offer.

Unfair labor practice charges were filed with the NLRB against KCW on November 30, 1977. A complaint was issued charging KCW with two violations of the National Labor Relations Act (NLRA): (1) unilaterally changing wages, hours and working conditions of its employees during the term of the contract in violation of § 8(a)(5) and § 8(d) (29 U.S.C. § 158(a)(5), (d)), and (2) interrogating employees in connection with Union activities in violation of § 8(a)(1) (29 U.S.C. § 158(a)(1)). The Administrative Law Judge (ALJ) found a violation of the latter charge, but concluded that the contract had expired and accordingly found no violation of the charge of unilaterally changing wages, hours and working conditions during the term of a contract. Upon review the Board affirmed the ALJ's finding of a violation of 8(a)(1), but also found that KCW had violated 8(a)(5) by unilaterally implementing its final offer during the term of an existing contract.[1]

Under § 8(a)(5) it is an unfair labor practice for an employer to refuse to bargain collectively with representatives of his employees with respect to terms and conditions of employment. § 8(d) provides in relevant part that

where there is in effect a collective–bargaining contract ... the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification–

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification; ...

It is undisputed that KCW made unilateral changes in terms and conditions of employment in October, 1977. It is conceded that the action was unlawful if the collective bargaining agreement was still in effect. The sole issue accordingly is whether a valid agreement between KCW and the

1. KCW does not contest the finding of the 8(a)(1) violation.

Union was in effect when the changes were made.

The contract expressly provides for both a "Notice of Opening" and a "Notice of Termination." The "Notice of Opening" must be given not later than 60 days prior to the expiration date. The "Notice of Termination" must be given not later than 60 days and not more than 90 days prior to the expiration date, "whereupon the contract shall, on its expiration date, terminate." The contract further provides that a notice of opening is not intended as a termination or "as forestalling automatic renewal"; and the parties "reserve the right to economic recourse in negotiations; except during the interval of Notice of Opening and expiration date." The Union's letter of January 12, 1977, expressly refers to the Union's "Notice of Opening" to negotiate terms and conditions of employment.

In holding that the contract was unambiguous and had not been terminated, the Board concluded:

> It is evident therefore that the parties intended by the two notice provisions to provide for alternative methods of pursuing negotiations toward a new contract. One of the notices would cause the contract to be renewed, the other would not; and it is obvious that the two provisions were not meant to have the same impact on the existing contract.

> In the instant case, the parties failed to exercise their option to terminate the contract and instead chose the prescribed course intended to renew the contract during negotiations. The Administrative Law Judge, in finding that the contract was in fact terminated, disregarded the unambiguous contractual language and, in effect, rewrote the contract. We have neither the inclination nor the authority to alter agreements which do not violate the Act, even though the contractual provisions may confer a favored position upon one of the parties.

KCW in seeking review makes two related contentions: (1) that the duration and renewal clause is ambiguous since "neither law nor logic permits the construction that a contract is both renewed and negotiable, the conclusion must be that it is one or the other;" and (2) that the duration and renewal clause, as construed by the Board, is illegal, since it runs afoul of § 8(d)(4) of the NLRA.[2]

In *NLRB v. Lion Oil Co.*, 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957), the Court clearly recognized that a contract may be both renewed and negotiable and that a provision of this nature is not violative of § 8(d)(4). In *Lion Oil* the collective bargaining agreement provided that it could be amended upon the passage of the primary term of the contract, and that the agreement would remain in effect past the primary term unless cancelled or terminated by giving 60 days notice. Notice of desire to open the contract for modification was given in accordance with the terms of the contract, and negotiations began. They continued after the original contract term expired. They were unproductive, however, and the union went out on strike. Notice of termination was never given. When unfair labor charges were filed against the employer he argued that the employees were not entitled to the protections of the Act since the strike occurred during the term of an enforceable contract and were thus in violation of § 8(d)(4). The issue before the Supreme Court was:

> Whether the requirement of this Section [8(d)(4)] is satisfied where a contract provides for negotiation and adoption of modifications at an intermediate date during its term, and a strike in support of modification demands occurs after the

---

**2.** § 8(d) provides in pertinent part that no party may terminate or modify a collective bargaining agreement, "unless the party desiring such termination or modification–...

 (4) continues in full force and effect, without resorting to strike or lock–out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later: ...

date on which such modifications may become effective–and after the 60–day notice period has elapsed–but prior to the terminal date of the contract.

*Lion Oil, supra* at 285, 77 S.Ct. at 332.

■ Since "[t]he union never gave notice to terminate the contract as contemplated by the . . . contractual provision," the Court concluded that "at all relevant times a collective bargaining agreement was in effect." *Id.* at 287, 77 S.Ct. at 333. It interpreted the term "expiration date" as used in § 8(d)(4) as referring not only to the terminal date of the bargaining contract, but also to an agreed date in the course of its existence when the parties could effect changes in its provisions. *Id.* at 290, 77 S.Ct. at 334. Thus § 8(d)(4) does not prohibit strikes after the giving of the statutorily required notice when the contract allows an agreement to be opened for modification. The Court agreed with a final report of the Joint Committee on Labor–Management Relations, made up of members of the Congress which passed the Taft–Hartley Act:

> Reading section 8(d) as a whole seems to lead to the conclusion that the act permits a strike, after a 60–day notice, in the middle of a contract which authorizes a reopening on wages. Use of the words 'or modify' and 'or modification' in the proviso, and use of 'or modification' in section 8(d)(1), and the statement in the final paragraph of the section that the parties are not required to agree to any modification effective before the contract may be reopened under its terms, all seem to contemplate the right of either party to insist on changes in the contract

if they have so provided. The right of the union would be an empty one without the right to strike after a 60 day notice.

*Id.* at 291,[3] 77 S.Ct. at 335.

KCW contends that this case is distinguishable from *Lion Oil* in that the Supreme Court did not there contemplate a situation in which the parties bargained over modifications after the contract had automatically renewed, with the Union reserving the right to strike in support of its proposals. It is true that the renewal here was for a fixed period, whereas in *Lion Oil* after expiration of the primary term the contact was terminable on 60 days notice. KCW suggests that the strike in that case was "tantamount to notice of termination." If the strike were "tantamount to notice of termination," however, then the strike itself would not have been authorized until 60 days after notice was given. Yet the Court found the strike was authorized 60 days after the union issued its Notice of Desire to Modify, i. e., during the term of the existing contract and while the parties were bargaining over modifications.[4] Consequently, the fact that the contract in the present case was not terminable by notice for one year, as opposed to 60 days in *Lion Oil*, is of no significance.[5] They were both in effect when modifications were being negotiated, and a strike was authorized–by implication in *Lion Oil*, by express provision here.

In support of its contentions that the duration clause as construed by the Board is illegal, KCW argues that if the contract was automatically renewed, "then neither party was, by Section 8(d), required to discuss or agree to a modification to be effec-

---

**3.** S.Rep.No.986, Pt. 3, 80th Cong., 2d Sess. 62.

**4.** The concluding paragraph of the Court's opinion in *Lion Oil* reads in part: "Here the strike occurred at a time when the parties were bargaining over modifications after notice and in accordance with the terms of the contract. Where there has been no express waiver of the right to strike, a waiver of the right during such a period is not to be inferred. We do not believe that the two–phase provision for termi-

nating this contract means that it was not within the contemplation of the parties that economic weapons might be used to support demands for modification before the notice to terminate was given." *Id.* 293–94, 77 S.Ct. at 336–337.

**5.** The renewed agreement could of course, be terminated at any time during the renewal period by mutual written agreement of the parties.

tive during the period of annual renewal . . . ." The concluding paragraph of § 8(d) provides that the duties imposed by § 8(d)

shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract.

In construing this provision the Court in *Lion Oil* concluded that "The negative implication seems clear: Congress recognized a duty to bargain over modifications when the contract itself contemplates such bargaining." *Id.* 290-91, 77 S.Ct. at 334-35.

 The "Duration and Renewal" provision in the contract between KCW and the Union expressly authorizes what the Court sanctioned in *Lion Oil,* i. e., the right to negotiate during the term of an automatically renewed contract when the contract so provides, and the right to strike in support of the proposed modifications upon the giving of a 60 day "Notice of Opening" to modify the contract. We affirm the Board's conclusion that the duration and renewal provision was neither ambiguous nor in violation of the NLRA. Since the collective bargaining agreement was never terminated, the employer's unilateral implementation of its final offer constitutes an unfair labor practice.

The petition for review is denied and the order of the Board will be enforced by the entry of an appropriate judgment.