[No. 18772-1-III. Division Three. October 5, 2000.]

LOCAL UNION I-369, OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, ET AL., *Appellants*, v. SANDVIK SPECIAL METALS CORPORATION, *Respondent*.

*David E. Williams* (of *Critchlow, Williams & Schuster*), for appellants.

*Stephen T. Osborne* (of *Raekes, Rettig, Osborne, Forgette & O'Donnell*) (*Joseph R. Ryan* of *Nordlund & Ryan*, of counsel), for respondent.

SWEENEY, J. — This is a labor dispute. Scott Jackson, a union employee, wants to arbitrate his termination under the arbitration provisions of a 1993 collective bargaining agreement (CBA) with Sandvik Special Metals Corporation. The CBA automatically renews unless either Sandvik or Oil, Chemical and Atomic Workers International Union Local I-369 serves a timely notice to modify, amend, or terminate the CBA. Here, the Union expressed an intent to *open* the CBA. The question before us is whether that request (demand) together with the Union's conduct was sufficient to terminate the CBA. We conclude that it was not and so reverse and remand with instructions to order arbitration of Mr. Jackson's termination pursuant to the 1993 CBA.

## FACTS

The Oil, Chemical and Atomic Workers International Union Local I-369 represents the workers at Sandvik Special Metals Corporation in Kennewick.

The 1993 Collective Bargaining Agreement. A three-year CBA ran from June 1, 1993 to May 31, 1996. The CBA contained a general arbitration clause by which the individual employees, the Union or Sandvik could demand arbitration to resolve "any asserted violation of the specific terms or provisions of this Agreement."

The CBA also provided that, after a 90-day probationary period, an employee could be discharged only for proper cause, subject to a grievance procedure which included arbitration.

The CBA also spelled out the terms of its own duration. After May 31, 1996, it automatically renewed from year to year, unless either party gave 60- to 90-days' notice to modify, amend or terminate. But even if notice were given,

the CBA remained in effect "during negotiations" to modify or amend. The CBA terminated upon either party giving 60-days' notice.[1]

Notices and Negotiations. On March 22, 1996, the Union informed Sandvik by letter that "Local I-369 wished to open the contract with Sandvik Special Metals." The letter also noted that: "The terms and conditions of this agreement will terminate on May 31, 1996."[2]

The Union and Sandvik began to negotiate wages and working conditions.

On June 5, 1996, Sandvik sent a memo to all employees that the old CBA had expired but that all its terms and conditions would continue in effect except for union security and arbitration of "certain issues."

On July 22, 1996, Sandvik declared an impasse in the negotiations over economic conditions—wage freeze, two-tier benefit system, and cap on insurance premiums. Sandvik then announced it would unilaterally implement its last offer. Its memo notified employees that the CBA was terminated, but that working conditions would be the same as under the CBA with the same two exceptions: union security and "the agreement to arbitrate certain dis-putes[.]"

The Union complained to the National Labor Relations Board (NLRB) about improper implementation. The NLRB determined that a valid impasse had been reached. The NLRB also approved the terms of Sandvik's unilateral implementation, finding that Sandvik left intact all re-

---

[1] "[T]he contract shall renew itself automatically from year to year unless either party gives notice to the other at least sixty days but not more than ninety days prior to the termination or anniversary date of its desire to modify, amend or terminate the Agreement. If notice to modify or amend is given, the Agreement shall remain in effect during negotiations except that if agreement is not reached during negotiations within the sixty-day period prior to the anniversary date, or thereafter, if negotiations continue beyond the anniversary date, either party may give sixty days' written notice to the other of its desire to terminate the Agreement. If notice is given to modify or amend, the parties shall commence discussions at least 30 days prior to the termination of the Agreement." Clerk's Papers at 145.

[2] Clerk's Papers at 354.

quired provisions of the CBA and implemented only proposals that "were reasonably encompassed within the most recent contract proposals made to the Union."

A new CBA went into effect on September 23, 1997. But in the meantime, Sandvik refused to arbitrate any grievances after May 31, 1996, because it concluded that the previous CBA had expired.

Sandvik fired Scott Jackson for cause on September 5, 1997, during the impasse period. Mr. Jackson denied any misconduct. Sandvik processed Mr. Jackson's discharge through the 1993 contract's grievance procedure, but it refused to arbitrate.

The Union and Mr. Jackson first filed a state law contract claim in superior court, alleging breach of the CBA. They later amended the complaint to allege jurisdiction under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185 (NLRA) and sought either an order forcing Sandvik to arbitrate Mr. Jackson's termination or a trial on the merits and reinstatement of Mr. Jackson with back pay. Sandvik moved for summary judgment, alleging the matter was within the exclusive jurisdiction of the NLRB. The court agreed and granted the motion. The court concluded that resolution of the complaint would require determination of the status of the CBA and was, therefore, preempted by federal law.

## ANALYSIS

### A. STATE COURTS — SUBJECT MATTER JURISDICTION

We must first decide whether state courts have authority to review this dispute. *In re Marriage of Little*, 96 Wn.2d 183, 197, 634 P.2d 498 (1981). Sandvik argues that the dispute is subject to the jurisdiction of the NLRB—exclusively. The Union maintains that the state court has jurisdiction under § 301(a)[3] of the NLRA. Under § 301(a), state and federal courts have concurrent jurisdiction over dis-

---

[3] Labor Management Relations Act of 1947 § 301, 29 U.S.C. § 185, 61 Stat. 156.

putes arising under existing CBAs. If, however, the CBA has terminated, jurisdiction shifts to the NLRB.

■■ 1. Standard of Review. Jurisdiction is a question of law subject to de novo review. *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999). And this is an appeal from a summary dismissal. We therefore review the record in a light most favorable to the Union as the nonmoving party to determine whether there is a genuine issue of material fact. We will, however, determine whether the substantive law was correctly applied if there is no issue of material fact. *Beers v. Southern Pac. Transp. Co.*, 703 F.2d 425, 428 (9th Cir. 1983).

■ 2. Burden of Proof. The employer must first make an arguable case that the action is subject to the exclusive jurisdiction of the NLRB. The burden then shifts to the union to establish § 301(a) jurisdiction. *Beaman v. Yakima Valley Disposal, Inc.*, 116 Wn.2d 697, 712, 807 P.2d 849 (1991).

## B. FEDERAL PREEMPTION

■ Federal preemption means simply that state law yields to federal law in any matter that is arguably either protected or prohibited by the NLRA. The U.S. Supreme Court has interpreted § 301(a) to confer concurrent jurisdiction on both state and federal courts. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 513, 82 S. Ct. 519, 7 L. Ed. 2d 483 (1962). However, federal labor law rather than state contract law controls the disposition of the dispute. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102-03, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962). "State law does not exist as an independent source of private rights to enforce collective bargaining contracts." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

1. NLRB Jurisdiction. Congress created the NLRB and gave it primary jurisdiction to resolve disputes that affect

collective bargaining. It did so to achieve a uniform national labor policy. Specifically, the NLRB has exclusive jurisdiction to resolve disputes involving collective bargaining practices that are protected under the NLRA and practices that are outlawed as unfair labor practices. 29 U.S.C. § 158(a); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959).

■ The rationale is that the NLRA protects the bargaining process. But once a CBA is in place, disputes over its interpretation do not implicate national labor concerns. And these disputes are then best decided by the courts. *Dowd Box*, 368 U.S. at 513.

2. Section 301(a) Jurisdiction. Section 301(a) of the NLRA therefore carves out an exception to the exclusive jurisdiction of the NLRB. It gives jurisdiction over contract enforcement to the courts—state and federal. 29 U.S.C. § 185(a).[4] Congress added it to the NLRA to give the courts jurisdiction to enforce labor contracts. Suits for violation of contracts between an employer and a labor organization "may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957).

■ Labor and management can even agree to practices that the NLRB would consider "unfair labor practices"— provided they freely contract to do so. *Amalgamated Ass'n of St. Employees v. Lockridge*, 403 U.S. 274, 300, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971). The NLRA does not then preempt actions which fall within the purview of § 301.[5] Section 301(a) gives the courts jurisdiction over suits to

---

[4] The NLRA is a subsection of the Labor Management Relations Act, codified at 29 U.S.C. § 185.

[5] *Lucas Flour*, 369 U.S. at 102 n.9; *accord William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 94 S. Ct. 2069, 40 L. Ed. 2d 620 (1974); *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S. Ct. 267, 9 L. Ed. 2d 246 (1962); *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 82 S. Ct. 1318, 8 L. Ed. 2d 462 (1962); *Dowd Box*, 368 U.S. 502.

enforce arbitration of individual grievances and wrongful discharge. *Smith v. Evening News Ass'n,* 371 U.S. 195, 199-200, 83 S. Ct. 267, 9 L. Ed. 2d 246 (1962).

■ Two elements are required to establish jurisdiction under § 301(a):

- The complaint must allege breach of a contract between an employer and a labor organization, *and,*
- the dispositive issue must be governed by the terms of the contract.

*Carpenters Health & Welfare Trust Fund v. Tri Capital Corp.,* 25 F.3d 849, 858 (9th Cir. 1994) (citing *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm., Inc.,* 707 F.2d 1067, 1071 (9th Cir. 1983)).

■ The question here is whether this contract remained in effect. If the CBA remained in effect, there is a strong policy in favor of "judicial enforcement." *International Bhd. of Elec. Workers, Local 532 v. Brink Constr. Co.,* 825 F.2d 207, 211 (9th Cir. 1987).

3. Contract Termination. The Union contends that the 1993 CBA continued automatically unless and until either the Union or Sandvik gave notice of intent to terminate—a notice unambiguously required by this CBA. The Union argues that its letter notified Sandvik that it simply "wished to open the contract . . . ." And *open* does not mean *terminate.*

■ We look to federal law for guidance when interpreting labor contracts. *Lucas Flour,* 369 U.S. at 102.

The court has jurisdiction to hear a dispute when the complaint alleges a violation of the terms of the agreement itself. In *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.,*[6] the employer's conduct was challenged, not under the terms of the agreement itself, but entirely as an unfair labor practice. The court therefore concluded it lacked jurisdiction. In contrast, the case before us requires that we

[6] 753 F.2d 1512, 1516 (9th Cir. 1985).

interpret the contract and determine whether, by its own terms, the CBA was automatically renewed or whether the Union's notice of desire to *open* was sufficient to terminate it.

 Many labor agreement provisions are intentionally left ambiguous. They are "more in the nature of 'a generalized code [designed] to govern a myriad of cases which the draftsmen cannot wholly anticipate.' " *Irwin v. Carpenters Health & Welfare Trust Fund*, 745 F.2d 553, 556 (9th Cir. 1984). But the contract termination requirements at issue here are not intentionally ambiguous. *Id*. In fact, they are not ambiguous at all. We then strictly interpret the language. *Id*. ("When such clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language."). The provision for termination here is similar to termination provisions in many collective bargaining agreements. *See Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1519 (9th Cir. 1985).

 The request (demand) by the Union here was to *open* the contract. And whatever that might mean, it does not mean terminate. In fact, the terms *open* or *reopen* refer to discussions regarding the terms of an ongoing contract. *See* ROBERTS' DICTIONARY OF INDUSTRIAL RELATIONS (BNA) 462 (rev. ed. 1971).[7] Typically, a provision for reopening the CBA for modification or amendment contemplates continuation of the terms of the contract after reopening. *See, e.g., KCW Furniture, Inc. v. NLRB*, 634 F.2d 436, 439 (9th Cir. 1980). Moreover, section 34.1 of the Sandvik contract uses the term "reopen" in the sense of open for limited negotiations or modifications to the ongoing CBA.

Sandvik argues that the "opening" of a contract is incom-

---

[7] "Reopening Clause—A provision in a collective bargaining agreement which permits either side to reopen the contract during its term, generally under specified circumstances or at specified periods of time prior to the actual expiration of the agreement."

patible with an ongoing enforceable CBA. But again the authority appears to the contrary. The employer in *KCW* made a similar argument. There, KCW argued "that the duration and renewal clause is ambiguous since 'neither law nor logic permits the construction that a contract is both renewed and negotiable, the conclusion must be that it is one or the other[.]' " *KCW*, 634 F.2d at 439. The court rejected that argument and, relying on *NLRB v. Lion Oil Co.*,[8] "recognized that a contract may be both renewed and negotiable and that a provision of this nature is not violative of [the NLRA]." *KCW*, 634 F.2d at 439.

Whether the Union threatened to strike early in the negotiations is irrelevant. The Labor Management Relations Act, 29 U.S.C. § 158(d)(4), allows a union to strike during negotiations for modification even though the contract continues in effect after notice of opening. The union's right to open for modification would be an empty one without the right to strike. *KCW*, 634 F.2d at 440.

Again, *open* does not mean *terminate*. And there is no notice here to modify, amend or terminate the CBA by either the Union or Sandvik. The agreement therefore continued in effect.

Sandvik agrees that the 1993 contract entitles Mr. Jackson to arbitration of his grievance. Its argument is simply that the contract was terminated, and along with it Sandvik's obligation to arbitrate labor disputes. We disagree.

## CONCLUSION

Mr. Jackson is entitled to arbitration of his termination dispute because the contract remained in effect at the time of his dispute. We remand to the trial court with instructions to order arbitration.

BROWN, A.C.J., and SCHULTHEIS, J., concur.

Review denied at 143 Wn.2d 1006 (2001).

---

[8] 352 U.S. 282, 77 S. Ct. 330, 1 L. Ed. 2d 331 (1957).