236 P.3d 968 (2010)
Jerry KILB, an individual, Appellant,
v.
FIRST STUDENT TRANSPORTATION, LLC, a Delaware limited liability company; First Student, Inc., a Florida corporation; Firstgroup America, Inc., a Florida corporation, Respondents.
No. 39564-9-II.
Court of Appeals of Washington, Division 2.
August 3, 2010.
*970 John Spencer Stewart, Thomas Ardell Larkin, Stewart Sokol & Gray LLC, Tyler James Storti, Portland, OR, for Appellant.
Maryann Yelnosky-Smith, Devra S. Hermosilla, David Wilson, Bullard Smith Jernstedt Wilson, Portland, OR, for Respondents.
ARMSTRONG, J.
¶ 1 Jerry Kilb alleges his employer discharged him for refusing to fire pro-union employees and pursue other anti-union tactics. Kilb sued in state court for wrongful discharge in contravention of Washington State public policy. The trial court dismissed his claim for lack of subject matter jurisdiction on the grounds that his claim was preempted by the National Labor Relations Act (Act) under San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). On appeal, Kilb argues that (1) as a supervisor he is not covered under the Act; (2) his state claim is distinct from that which he could bring under the Act; and (3) both recognized exceptions to Garmon apply and preclude preemption. Because Kilb's claim is essentially the same claim he could make under the Act, and neither Garmon exception applies, the trial court did not err in dismissing Kilb's claim, therefore we affirm.

FACTS[1]
¶ 2 In 2005, Jerry Kilb began working for First Student,[2] managing First Student's Gresham, Oregon bus routes.
¶ 3 Kilb alleges that starting in 2006, management at First Student had concerns that its company bus drivers would unionize. Management became aware that national labor unions were specifically targeting bus drivers at the Gresham location. Kilb claims his superiors told him the company needed to take affirmative action to prevent the drivers from unionizing.
¶ 4 In 2007, the Gresham bus drivers voted on whether to unionize. The vote fell short of the number necessary to unionize. Following the vote, Kilb alleges that management presented him with a list of drivers perceived to be pro-union and instructed him to fire them as soon as possible. Kilb did not fire any of these drivers, and in October 2007, First Student terminated his employment. Kilb maintains he was fired for "refusing to commit the illegal acts of terminating pro-union employees and for not following the First Student management's directives regarding leading the anti-union efforts in the Gresham branch." Clerk's Papers at 6.
¶ 5 Kilb sued in Clark County Superior Court for wrongful discharge in violation of Washington State law.[3] RCW 49.36.010; RCW 49.32.020. Kilb claimed his discharge violated the right of employees to organize *971 and form unions, RCW 49.36.010, in contravention of Washington State's clearly established public policy against interfering with these rights, RCW 49.32.020. First Student moved to dismiss for lack of subject matter jurisdiction under CR 12(b)(1). First Student argued that Kilb's claim was preempted by federal law under the Garmon preemption doctrine. The trial court granted the motion and dismissed the case.

ANALYSIS

I. Standard of Review
¶ 6 Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. Young v. Clark, 149 Wash.2d 130, 132, 65 P.3d 1192 (2003).

II. The Garmon Preemption Doctrine
¶ 7 In the National Labor Relations Act (Act), 29 U.S.C. §§ 151-69, Congress centralized the administration of its labor policies by creating the National Labor Relations Board (Board) and giving it broad authority. Hume v. Am. Disposal Co., 124 Wash.2d 656, 663, 880 P.2d 988 (1994). The Act preempts a state law claim that is based on conduct arguably subject to sections 7 or 8 of the Act. Garmon, 359 U.S. at 244-45, 79 S.Ct. 773; Beaman v. Yakima Valley Disposal, Inc., 116 Wash.2d 697, 704, 807 P.2d 849 (1991). Section 7 of the Act guarantees the right of employees to organize and collectively bargain. 29 U.S.C. § 157. Section 8 prohibits employer interference with employees engaging in activities protected under section 7. 29 U.S.C. § 158(a)(1). To be preempted, a cause of action need only be "potentially subject to" sections 7 or 8 of the Act. Beaman, 116 Wash.2d at 704-05, 807 P.2d 849. The party asserting preemption must put forth sufficient evidence for the court to conclude that the conduct at issue is potentially subject to the Act. Int'l Longshoremen's Ass'n. v. Davis, 476 U.S. 380, 396, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986).

III. Coverage under the Act
¶ 18 Kilb argues the trial court erred in dismissing his complaint. He claims that only employees, not supervisors, are protected under section 7 of the Act and are eligible to pursue administrative remedies before the Board. First Student responds that although a supervisor is not an "employee" as the Act defined it, Kilb's allegations of unfair labor practices are subject to the Board's exclusive jurisdiction.
¶ 19 Under the Act, supervisors are explicitly excluded from the definition of "employee." 29 U.S.C. § 152(3). Since section 7 details employees' rights, supervisors are not entitled to its protections. See Hotel Employees and Rest. Employees, Local 8 v. Jensen, 51 Wash.App. 676, 685, 754 P.2d 1277 (1988). This allows an employer to insist on the loyalty of his supervisors and prevents a supervisor from engaging in protected employee activities, such as organizing and collective bargaining. Auto. Salesmen's Union Local 1095 v. NLRB, 711 F.2d 383, 386 (D.C.Cir.1983). There are, however, exceptions to the exclusion of supervisors under the Act. For example, where a supervisor is disciplined for refusing to commit an unfair labor practice, the employer's conduct violates section 8(a)(1) of the Act.[4]Parker-Robb Chevrolet, Inc., 262 NLRB 402, 403 (1982), enf'd sub nom. Auto. Salesmen's Union v. NLRB, 711 F.2d 383 (D.C.Cir.1983). The underlying theory is that an employer who forces supervisors to engage in unfair labor practices necessarily interferes with employees' section 7 rights.[5]Gerry's Cash Mkts., *972 Inc. v. NLRB, 602 F.2d 1021, 1023 (1st Cir. 1979); see also Davis, 476 U.S. at 384 n. 4, 106 S.Ct. 1904.
¶ 10 Kilb correctly argues that coverage under the Act depends on a party's status under Washington law. In Hotel Employees, Division One of our court held that only employers, employees, and labor organizations are subject to the Act. Hotel Employees, 51 Wash.App. at 686, 754 P.2d 1277. But the court qualified this rule, noting that courts strain to find Board jurisdiction in cases involving unfair labor practices even where it is unclear that all the parties are subject to the Act.[6]Hotel Employees, 51 Wash.App. at 686-87, 754 P.2d 1277 (holding that the definition of "employer" encompassed those who act in concert with an employer to commit an unfair labor practice). In justifying a departure from the general rule, the court acknowledged two United States Supreme Court cases where a state claim brought by a supervisor was preempted on the theory that harm to the supervisor directly affected employees covered by the Act. Hotel Employees, 51 Wash.App. at 687-88, 754 P.2d 1277 (citing Local 926, Int'l Union of Operating Eng'rs v. Jones, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983); Local 207, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Union v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963)). The court reasoned that preemption of claims involving unfair labor practices even in cases where determining the parties' status is difficultis consistent with policy in favor of developing uniform national labor standards. Hotel Employees, 51 Wash.App. at 689-90, 754 P.2d 1277. We agree that while the party's status is unquestionably material to the determining preemption under the Act, there are circumstances where an excluded party may be covered in order to protect a covered party.
¶ 11 Kilb also cites Davis, 476 U.S. at 396-98, 106 S.Ct. 1904, Smith v. CIGNA Health-Plan of Arizona, 203 Ariz. 173, 52 P.3d 205 (2002), and Pontiac Osteopathic Hosp., 284 NLRB 442 (1987), as examples of courts refusing to preempt state claims where the aggrieved party is a supervisor. In Davis, 476 U.S. at 384-85, 106 S.Ct. 1904, the plaintiff supervisor was discharged for his direct participation in attempting to form a union. Because a supervisor engaging in such activities is not covered under the Act, there was no federal jurisdiction justifying preemption. Davis, 476 U.S. at 398, 106 S.Ct. 1904. In Smith, 203 Ariz. at 178, 52 P.3d 205, where the plaintiff alleged wrongful termination for organizing a meeting to discuss working conditions, the court refused to apply the Garmon preemption doctrine because the employer failed to establish that the plaintiff's conduct was arguably subject to the Act. But even though the employer failed to meet its burden of proof in this instance, the court acknowledged grounds for preemption if an employer discharges a supervisor for refusing to commit an unfair labor practice. Smith, 203 Ariz. at 178 n. 1, 52 P.3d 205. And finally, in Pontiac, 284 NLRB at 443, the Board differentiated between discharging a supervisor for failing to commit an unfair labor practice and failing to support management's unfair labor practices. While the Act does not cover the latter conduct, the Board recognized coverage where a supervisor is discharged for refusing to commit an unfair labor practice. Pontiac, 284 NLRB at 443. Not only do these cases fail to support Kilb's contention, they undermine his argument by recognizing situations where a supervisor may be covered.
¶ 12 Kilb alleges that he was discharged because he was not willing to terminate pro-union bus drivers and engage in management's anti-union efforts. An employer's discharge of a supervisor for refusing to commit unfair labor practices is, at least arguably, a *973 violation of section 8(a)(1).[7]Davis, 476 U.S. at 384 n. 4, 106 S.Ct. 1904. Accordingly, the trial court did not err in concluding that the Act covered Kilb's claim.

IV. State Law
¶ 13 Next, Kilb argues that even if the Act covers his claim, the Garmon preemption doctrine does not apply because his state claim is not identical to the claim he would have presented to the Board. Kilb reasons that to be identical, the elements of the state and federal Act claim must be the same. He contends that Washington's public policy against retaliating employers, at issue under state law, distinguishes his claim from a claim under the Act. We disagree.
¶ 14 For the Garmon preemption doctrine to apply, the controversy presented to the state court must be identical with that which could be presented to the Board. Beaman, 116 Wash.2d at 709, 807 P.2d 849. Preemption is designed to shield the system from conflicting regulation of conduct; it is therefore the conduct being regulated, not the legal standards, that courts focus on in deciding whether the Board's jurisdiction is exclusive. Motor Coach Employees v. Lockridge, 403 U.S. 274, 292, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). If the conduct relied on to prove an essential element of the state action is conduct that is arguably covered by the Act, the state claim is preempted. See Lumber Prod. Indus. Workers Local No. 1054 v. West Coast Indus. Relations Ass'n, 775 F.2d 1042, 1049 (9th Cir.1985).
¶ 15 Kilb relies on Brundridge v. Fluor Federal Services, Inc., 109 Wash.App. 347, 35 P.3d 389 (2001), to argue that his state claim is distinct from a claim of unfair labor practices under the Act. In that case, union members filed a state action alleging wrongful termination for refusing to install valves on a pipeline they believed to be unsafe. Brundridge, 109 Wash.App. at 352, 35 P.3d 389. In holding that the state claim differed from any claim that could have been brought before the Board, the court reasoned that the workers' claim for wrongful discharge did not implicate collective bargaining or unionization and that claimed violations of Washington's health and safety laws are not even arguably unfair labor practices. Brundridge, 109 Wash.App. at 361, 35 P.3d 389. That the plaintiffs were all members of the same union was not, as Kilb suggests, relevant to the court's analysis of their claim. Brundridge does not support Kilb's position.
¶ 16 That the legal elements of his state claim differ slightly from those under federal law does not help Kilb. In state court, he alleged that he was discharged for refusing to terminate pro-union employees and for engaging in anti-union activities in contravention of Washington State public policy. Before the Board, Kilb would have to prove that his employers discharged him for refusing to commit unfair labor practices, such as terminating pro-union employees. The essential element of proving the employer's prohibited conduct in state court is the very same conduct that the Board would consider in an unfair labor practice claim. See Hotel Employees, 51 Wash.App. at 684, 754 P.2d 1277. Where, as here, the underlying conduct of both claims is the same, the state claim is preempted.

V. The Garmon Exceptions
¶ 17 There are two exceptions to preemption under Garmon: (1) when the regulated activity under state law is merely a peripheral concern of the Act; or (2) when the regulated activity touches an interest so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, there is no inference Congress intended to deprive the states of the power to act. Garmon, 359 U.S. at 243-44, 79 S.Ct. 773; see also Hume, 124 Wash.2d at 663-64, 880 P.2d 988. Kilb argues that both exceptions apply to his claim.

A. Peripheral Concern

¶ 18 Kilb maintains that the discharge of supervisors is a peripheral concern *974 under the Act. He claims that if Congress had been concerned with protecting supervisors, it would have specifically included them in a class with protected employees.
¶ 19 As demonstrated above, courts have inextricably linked the discharge of supervisors for refusal to commit unfair labor practices with the section 7 rights of employees under the Act. In Parker-Robb, the Board explained:
[W]hen a supervisor is discharged for testifying at a Board hearing or a contractual grievance proceeding, for refusing to commit unfair labor practices, or for failing to prevent unionization, the impact of the discharge itself on employees' Section 7 rights, coupled with the need to ensure that even statutorily excluded individuals may not be coerced into violating the law or discouraged from participating in Board processes or grievance procedures, compels that they be protected despite the general statutory exclusion.
Parker-Robb, 262 NLRB at 404. That supervisors do not fall under the definition of "employees" under the Act does not make them a peripheral concern. In many instances supervisors are the direct link between an employer's unfair labor practices and an employee's ability to exercise his or her rights. Kilb fails to convincingly argue the contrary.
¶ 20 The peripheral concern exception applies only in cases where the underlying conduct, even if arguably related to the Act, is a peripheral federal concern. See Hotel Employees, 51 Wash.App. at 679, 754 P.2d 1277. State jurisdiction over tortious conduct, for example, is warranted where there is a state interest in regulation and the potential for interference with the federal regulatory scheme is minimal. Belknap, Inc. v. Hale, 463 U.S. 491, 512, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (holding that misrepresentation and breach of contract claims in state court did not interfere with the Board's determination of related matters); see e.g., Farmer v. Union Bhd. of Carpenters, 430 U.S. 290, 304-05, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (rejecting the preemption of an action for intentional inflict of emotion distress even though the conduct was arguably an unfair labor practice); Linn v. Plant Guard Workers, 383 U.S. 53, 61, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (holding that false statements in labor dispute that were injurious to reputation were actionable under state law). Here, Kilb's allegations are the very definition of unfair labor practices regulated under the Act. We cannot construe his claim as a peripheral matter that bars preemption.

B. Local Concern

¶ 21 Kilb also contends the "local concern" exception applies given Washington's express policy under RCW 49.32.020. Kilb relies on Hume, 124 Wash.2d at 665, 880 P.2d 988, and Bravo v. The Dolsen Cos., 125 Wash.2d 745, 888 P.2d 147 (1995), to show that other courts have found Washington statutes to reflect a legitimate local concern rooted in articulated public policy.[8] According to Kilb, the state courts, not federal ones, should oversee adjudication of claims implicating explicit Washington policy. Kilb is essentially asking us to presume a local concern sufficient to satisfy the Garmon exception where a Washington statute articulates applicable public policy. We decline to do so.
¶ 22 In Hume, four former employees brought an action alleging employer retaliation for demanding compensation for overtime. Hume, 124 Wash.2d at 660-61, 880 P.2d 988. The court found that the statute regulating employer retaliation touched a deeply rooted local concern and therefore fell under the local concern exception to the Garmon doctrine. Hume, 124 Wash.2d at 664, 880 P.2d 988. Differentiating between the state and federal claims, the court reasoned that the Board's inquiry would focus on whether overtime wage claims were a protected activity, while a state court would focus on whether the employees' discharge was retaliatory. Hume, 124 Wash.2d at 664-65, 880 P.2d 988. Thus, the court was able to rely on a clearly articulated local concern to preclude preemption without interfering with the federal regulatory scheme. Hume, 124 Wash.2d at 665, 880 P.2d 988. Other courts *975 have likewise found that preemption is not required when state legislation rooted in local concern does not interfere with the federal regulation of collective bargaining and unionizing. See e.g., Brundridge, 109 Wash. App. at 361, 35 P.3d 389 (reasoning that the health and safety of Washington's workers and citizens is a legitimate local concern distinct from unfair labor practices) and Delahunty v. Cahoon, 66 Wash.App. 829, 839, 832 P.2d 1378 (1992) (acknowledging that Washington has a substantial interest in regulation of discriminatory employment practices, which does not interfere with the federal regulatory scheme as to unfair labor practices).
¶ 23 But even where a clear state public policy exists, a state claim will be preempted where Congress intended to deprive states of the power to act. Davis, 476 U.S. at 391, 106 S.Ct. 1904; Garmon, 359 U.S. at 244, 79 S.Ct. 773. Washington State's public policy regarding labor regulation recognizes and protects a worker's right to associate, self-organize, designate representatives, negotiate terms and conditions of employment, and mandates that he shall be free from interference and restraint of these rights. RCW 49.32.020. Sections 7 and 8 of the Act similarly guarantee the right of employees to organize and collectively bargain and prohibit employer interference with these rights. 29 U.S.C. §§ 157, 158(a)(1). Unlike in Hume, where the court found differences between the state and the federal regulatory schemes, sections 7 and 8 of the Act clearly regulate the same conduct protected under RCW 49.32.020. "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [Act], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." Garmon, 359 U.S. at 244, 79 S.Ct. 773. Even though Kilb can reasonably argue that the Washington statute demonstrates a local concern, this is not sufficient to override congressional intent to confer exclusive federal jurisdiction. Because Kilb's challenge to federal preemption fails, the trial court did not err in dismissing his state claim.
¶ 24 Affirmed.
We concur: PENOYAR, C.J., and WORSWICK, J.
NOTES
[1] Because the case has not been litigated, we take the facts from Kilb's complaint. The respondent acknowledges Kilb's "allegations" for the purposes of addressing the jurisdiction issue.
[2] Respondents First Student Transportation, LLC, First Student, Inc., and Firstgroup America, Inc. are collectively referred to as "First Student."
[3] Kilb filed his claim in state court on June 27, 2008, eight months after his termination. Generally, a claim of unfair labor practices under the Act must be filed and served within six months after the date of the alleged statutory violation. Kelley v. NLRB, 79 F.3d 1238, 1244 (1996).
[4] A number of federal circuit courts have adopted this rule. See e.g., Russell Stover Candies, Inc. v. NLRB, 551 F.2d 204, 206 (8th Cir. 1977); Belcher Towing Co. v. NLRB, 614 F.2d 88, 91 (5th Cir. 1980); NLRB v. Advertisers Mfg. Co., 823 F.2d 1086 (7th Cir.1987); NLRB v. Oakes Mach. Corp., 897 F.2d 84, 89 (2nd Cir. 1990); USF Red Star, Inc. v. NLRB, 230 F.3d 102, 106 (4th Cir.2000).
[5] In his reply brief, Kilb argues that First Student has the burden of showing that his discharge directly interfered with the employees' rights. Under the case Kilb cites, Union Local 1095, 711 F.2d 383, 387-88 (D.C.Cir.1983), there is a distinction between cases where a supervisor's discharge is part of a "pattern of conduct" aimed at discouraging employees from exercising their rights and cases where a supervisor is discharged for refusing to commit unfair labor practices. See also Parker-Robb, 262 NLRB at 403. The Local 1095 court declined to extend a supervisor protection under the "pattern of conduct" theory where there is no direct evidence of employer interference with employees' rights. Local 1095, 711 F.2d at 387-88. But the court affirmed that the discharge of a supervisor for refusing to commit unfair labor practices directly interferes with the exercise of employees' section 7 rights. Local 1095, 711 F.2d at 387.
[6] Kilb cites Hume for the proposition that Washington courts disfavor preempting claims based on Washington law. Hume does acknowledge a general prejudice against federal preemption but only to the extent that preemption requires clear congressional intent. Hume, 124 Wash.2d at 664, 880 P.2d 988.
[7] Kilb argues that federal authority establishing this rule is nonbinding. But preemption law is federal law, and is controlling of this jurisdiction issue. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 78, 896 P.2d 682 (1995) (under the Supremacy Clause of United States Constitution, state law that conflicts with federal law is without effect).
[8] Bravo, 125 Wash.2d 745, 888 P.2d 147, is inapposite. There, the court did not address the issue of local concern in the context of Garmon preemption.