FILED
COURT OF APPEALS
DIVISION II

2015 JUN 30 AM 8: 30

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WAL-MART STORES, INC., | No. 45442-4-II |
| Appellant, | |
| v. | |
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; ORGANIZATION UNITED FOR RESPECT AT WALMART; and DOES I-X, | PUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — We are asked to decide whether the National Labor Relations Act (NLRA)[1] preempts a state court trespass action.[2] Wal-Mart Stores, Inc. (Walmart) filed unfair labor practice charges with the National Labor Relations Board (NLRB) against the United Food and Commercial Workers International Union (UFCW), Organization United for Respect at Walmart (OURWalmart), and John Does I-X over their alleged trespass and employee coercion activities inside and outside Walmart stores in a number of states, including Washington.[3] After withdrawing the trespass allegations before the NLRB, Walmart pursued the trespass allegations in state courts across the country, and filed a state trespass complaint against the UFCW in Pierce

---

[1] 29 U.S.C. §§ 151-169.

[2] U.S. CONST. art. VI, cl. 2 (Supremacy Clause).

[3] We refer to the respondents collectively as "UFCW."

No. 45442-4-II

County Superior Court. The UFCW filed an anti-SLAPP[4] motion to strike Walmart's complaint under RCW 4.24.525.

The superior court ruled that, based on the Supremacy Clause of the United States Constitution, the NLRA preempted Walmart's state trespass action and dismissed the trespass action. The court did not apply the anti-SLAPP analysis because it ruled that it did not have jurisdiction over the underlying state trespass action. We hold that the NLRA preempts Walmart's state trespass action, and that the superior court correctly ruled that it did not have jurisdiction over the trespass action and correctly declined to reach the UFCW's anti-SLAPP motion. We affirm the trial court's dismissal.

FACTS

I. THE UFCW'S ACTIVITIES INSIDE AND OUTSIDE OF WALMART STORES

The UFCW is a national labor organization that represents grocery, retail, meat packing, and food processing workers in many states, including Washington, and OURWalmart is a labor organization and the UFCW's wholly-owned subsidiary and agent. In 2012 and 2013, the UFCW picketed, conducted in-store demonstrations, and organized flash mobs[5] inside and outside Walmart's stores in Washington. On November 3, 2012, approximately 20 demonstrators entered a Walmart store in Auburn, filled shopping carts with merchandise, marched through the aisles

---

[4] Lawsuits filed under RCW 4.24.525 are called "Strategic Lawsuits Against Public Participation or SLAPP." *See* Laws of 2010, ch. 118 § 1(b).

[5] A group of people who are summoned (such as by e-mail or text messages) to a designated location at a specified time to perform an indicated action before dispersing. *Merriam-Webster Unabridged, available at* http://unabridged.merriam-webster.com.

2

chanting and shouting, and blocked space next to cash registers. On November 23, a group of approximately 15 demonstrators assembled in the parking lot of Walmart's Lakewood store, entered the store separately and pretended to shop, filling their carts with merchandise. They met at the front of the store, blocked access to cash register lanes, and loudly sang and chanted anti-Walmart lyrics to the tunes of Christmas carols. Walmart asked them to leave, but they refused. Similar incidents occurred at other Walmart stores in Washington in November and December 2012 and in April and July 2013. And at various times, similar incidents by the UFCW occurred at Walmart's stores in Arkansas, California, Colorado, Florida, Maryland, and Texas. In response, Walmart sent letters to the UFCW representatives stating that it revoked "any invitation, license or privilege" to the UFCW or its subsidiary organizations to come onto Walmart's property for any purpose other than shopping. Clerk's Papers (CP) at 83-84.

## II. WALMART'S UNFAIR LABOR PRACTICE CHARGES BEFORE THE NLRB

On November 16, 2012, Walmart filed an unfair labor practice (ULP) charge with the NLRB against the UFCW under section 8(b)(1)(A) of NLRA. 29 U.S.C. § 158 (b)(1)(A) (Unfair labor practices by labor organizations). Walmart alleged that (1) the NLRA prohibited the UFCW's "trespass" because it involved participants who "invaded" or "entered" Walmart property and refused to leave when asked, CP at 240, and (2) the UFCW violated the NLRA "by planning, orchestrating, and conducting a series of unauthorized and blatantly trespassory in-store mass demonstrations, invasive 'flash mobs,' and other confrontational group activities at numerous facilities nationwide." CP at 24. As a result of this ULP charge, Walmart and the UFCW entered into negotiations, settled this charge on January 29, 2013, and agreed to "a hiatus of at least 60 days" without "any picketing, including confrontational conduct that is the functional equivalent

3

of picketing." CP at 240. On February 7, the UFCW engaged in similar incidents at a Maryland Walmart store, prompting Walmart to file a second ULP against the UFCW. When similar picketing activity occurred at a Michigan Walmart on May 22, Walmart filed a third ULP against the UFCW.

The NLRB began investigating but, before it could complete its investigation, Walmart amended its ULP charge and withdrew the trespass allegations. In a related matter in another state, Walmart's counsel explained that Walmart "withdrew all [Labor Board] charges with respect to these in-store invasion or property intrusions precisely because it chose [state courts] and state court actions for trespass rather than the NLRB process." Br. of Respondent at 4 (alterations in original).

### III. WALMART'S STATE TRESPASS COMPLAINT

On April 17, 2013, Walmart filed a state trespass complaint against the UFCW in Pierce County Superior Court. CP at 1-14; 1384-85. The UFCW filed an anti-SLAPP motion to strike Walmart's state trespass complaint under RCW 4.24.525, Washington's anti-SLAPP statute. The superior court ruled that, based on the Supremacy Clause, the NLRA preempted Walmart's state trespass action. The superior court declined to reach the UFCW's anti-SLAPP motion to strike and dismissed Walmart's trespass action. Walmart appeals.

### ANALYSIS

Walmart argues that (1) the filing of ULP charges under the NLRA did not trigger federal preemption because the state trespass action is a separate legal controversy with different legal elements and remedies, even if it arises from similar facts, and (2) the "deeply rooted in local feeling" exception to preemption applies and the state court should have retained jurisdiction here

to resolve the trespass matter, (3) the likelihood is slight that the state court's jurisdiction would interfere with NLRB's jurisdiction, and (4) without state court intervention, Walmart would be left without any legal recourse to stop the UFCW from trespassing.

We hold that the NLRA preempts Walmart's state trespass action, and that the superior court correctly ruled that it did not have jurisdiction over the trespass action and correctly declined to reach the UFCW's anti-SLAPP motion. We affirm the trial court's dismissal.

## I. PREEMPTION

With the passage of the NLRA, 29 U.S.C. §§ 151-69, Congress "centralized the administration of its labor policies by creating the [NLRB] and giving it broad authority." *Kilb v. First Student Transp., LLC*, 157 Wn. App. 280, 285, 236 P.3d 968 (2010). The NLRA preempts a state law claim that is based on conduct arguably subject to sections 7 or 8 of the NLRA. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-45, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959); *Beaman v. Yakima Valley Disposal, Inc.*, 116 Wn.2d 697, 704, 807 P.2d 849 (1991). Section 7 of the NLRA guarantees the right of employees to organize and collectively bargain. 29 U.S.C. § 157. Section 8 prohibits employer interference with employees engaging in activities protected under section 7. 29 U.S.C. § 158(a)(1). To be preempted, a cause of action need only be "'potentially subject to'" sections 7 or 8 of the NLRA. *Beaman*, 116 Wn.2d at 705 (quoting *Garmon*, 359 U.S. at 245). A party asserting preemption must put forth sufficient evidence for the court to conclude that the conduct at issue is potentially subject to the NLRA. *See Int'l Longshoremen's Ass'n., AFL-CIO v. Davis*, 476 U.S. 380, 397, 106 S. Ct. 1904, 90 L. Ed. 2d 389 (1986).

We review federal preemption issues de novo. *Peterson v. Kitsap Cmty. Fed. Credit Union*, 171 Wn. App. 404, 416, 287 P.3d 27 (2012). We also review superior court rulings on motions to dismiss de novo. *Singleton v. Naegeli Reporting Corp.*, 142 Wn. App. 598, 606, 175 P.3d 594 (2008).

Preemption is a purely jurisdictional issue. *See Intl. Longshoremen's Ass'n.*, 476 U.S. at 391. The NLRA preempts state court lawsuits involving labor matters because "Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." *Garmon*, 359 U.S. at 242. Any other rule would involve "too great a danger of conflict between power asserted by Congress and requirements imposed by state law." *Id.* at 244. Federal preemption is based on the United States Constitution's mandate that the "Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. CONST., art. VI, cl. 2.

To determine whether NLRA preempts the state court action, we first compare Walmart's NLRB allegations under section 8(b)(1)(A) to Walmart's state trespass allegations to "determine whether the conduct that the state seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA." *Local 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones*, 460 U.S. 669, 676, 103 S. Ct. 1453, 75 L. Ed. 2d 368 (1983). When conduct is

"arguably protected" under section 7[6] or "arguably prohibited" under section 8[7] of the NLRA, the NLRA preempts the lawsuit. *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 184, 98 S. Ct. 1745, 56 L. Ed. 2d 209 (1978). The "critical inquiry" in determining whether the conduct at issue is "arguably prohibited by the [NLRA] and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board." *Belknap, Inc. v. Hale*, 463 U.S. 491, 510, 103 S. Ct. 3172, 77 L. Ed. 2d 798 (1983); *Sears*, 436 U.S. at 197.

## II. ARGUABLY PROTECTED CONDUCT UNDER SECTION 8

Citing *Sears*, 436 U.S. at 183, Walmart argues that section 8, the arguably protected prong of the NLRA, does not preempt its state trespass action. In *Sears*, the employer sued the union alleging state trespass after union members protested Sears's decision to employ non-union carpenters and refused to comply with Sears's demand that the union cease its picketing activities off its property. *Sears*, 436 U.S. at 182-83. The Court addressed whether the NLRA "deprives a state court of the power to entertain an action by an employer to enforce state trespass laws against

---

[6] Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations." 29 U.S.C. § 157. It also broadly protects the right of employees to "'engage in other concerted activities for the purpose of collective bargaining.'" *Teamsters Local Union No. 117 v. Dep't of Corr.*, 179 Wn. App. 110, 119, 317 P.3d 511 (2014) (quoting 29 U.S.C. § 157). Picketing intended to induce an employer or employee to join or contribute to a labor organization is a "concerted activit[y] for the purpose of collective bargaining" protected by section 7. 29 U.S.C. § 157; *see Bldg. & Const. Trades Council v. Associated Builders & Contractors of Mass./R. I., Inc.*, 507 U.S. 218, 225, 113 S. Ct. 1190, 122 L. Ed. 2d 565 (1993).

[7] The NLRA, section 8(a)(1), makes it an ULP for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]." 29 U.S.C. § 158(a)(1).

picketing which is arguably–but not definitely–prohibited or protected by federal law." *Sears*, 436 U.S. at 182.

The Court found the risk of state interference would be slight because, even if Sears had filed a NLRB charge, the NLRB would have focused on the union's objective in picketing, not on the picketing's location as that would have been the focus in the state trespass action. *Sears*, 436 U.S. at 198. Also, the union could still have sought NLRB protection by filing a section 8 charge with the NLRB. *Id.* at 207 n.44 ("The fact that Sears demanded that the Union discontinue the trespass before it initiated the trespass action is critical to our holding."). The Court also noted that, without state intervention, Sears would be left without any legal recourse and any state relief would have been limited to enjoining the picketers because Sears had not alleged the picketers had violated any state or federal laws and any potential decision by the NLRB was completely unrelated to the charge of trespass. *Id.* at 198. Thus, *Sears* explains that "[t]he reasons why preemption of state jurisdiction is normally appropriate when union activity is arguably prohibited by federal law do not apply in this situation." *Id.* at 198; *see Kilb*, 157 Wn. App. at 291; *see also Belknap*, 463 U.S. at 512.[8]

---

[8] In *Belknap*, the Court explained its reasoning in *Sears* without mentioning the deeply rooted exception, stating that NLRA preemption did not apply to the state claim because the "state court and Board controversies could not fairly be called identical." *Belknap*, 463 U.S. at 510 (holding that misrepresentation and breach of contract claims in state court did not interfere with the NLRB's determination of related matters); *see, e.g., Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 304-05, 97 S. Ct. 1056, 51 L. Ed. 2d 338 (1977) (no federal preemption of an action for intentional infliction of emotional distress although the conduct was arguably an unfair labor practice); *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 61, 86 S. Ct. 657, 15 L. Ed. 2d 582 (1966) (holding that false statements in a labor dispute that were injurious to employer's reputation were not preempted).

In its NLRB charge, Walmart alleged that it sought to stop the "planning, orchestrating, and conducting a series of unauthorized and blatantly trespassory in-store mass demonstrations, invasive 'flash mobs,' and other confrontational group activities at numerous facilities nationwide." CP at 243. Walmart argues that its NLRB charge did not allege that *all* the UFCW's conduct violated the NLRA, only *some* of the UFCW's conduct. And in its state trespass complaint, Walmart challenged the "confrontational" and "disruptive" manner in which the UFCW demonstrated in its stores, citing examples of the manner in which the UFCW confronted customers and management. CP at 50.

Walmart also alleged additional violations of sections 7 and 8 in its NLRB charge, specifically that the UFCW

> restrained and coerced employees in the exercise of their Section 7 rights (which includes the right to refrain from supporting the UFCW) by attempting to impose its will on local facility management in front of facility employees through the sheer force of a mass of moving bodies despite requests and direction by local management to leave.

And the UFCW violated section 8(b)(1)(A) by coercing Walmart's employees when it (1) "[b]locked ingress and egress from facilities," (2) "[f]ilmed employees reacting to the UFCW invasions," (3) "[m]ade threats of violence," and (4) "[a]ttempted to make improper payments to employees to yield to the UFCW's wishes."
CP at 243.

Both the ULP and state trespass action challenge union activity in and near Walmart's stores. Unlike in *Sears*, the UFCW's conduct is central to Walmart's trespass theory and claim that Walmart objected to the demonstrating and picketing itself, not just to the location of this conduct but the UFCW's conduct in trespassing by entering Walmart's stores without an intent to

shop. In *Sears*, the property owner "sought simply to remove the pickets from [the company's] property" arguing that "as a matter of state law, the *location* of the picketing was illegal but the *picketing itself* was unobjectionable." *Sears*, 436 U.S. at 185 (emphasis added). The Court concluded that under section 8(b)(7)(C) of the NLRA, the "arguably prohibited" conduct focused on the purpose of the union's activities, which was not identical to the state court lawsuit that focused on simple trespass. *Id.* at 198.

Here, unlike in *Sears*, Walmart objected to both the picketing and the location of the UFCW's conduct. And unlike in *Sears*, where federal preemption would have denied the employer any relief because the union had not filed NLRB charges, Walmart has legal recourse; it already filed NLRB charges and may still refile charges. 253; *Sears*, 436 U.S. at 198. And injunctive relief may be available to Walmart.[9] Walmart challenges both the location and method of the UFCW's picketing, which affects the ability of a union to organize and form labor union representation, a core concern of the NLRA.

We hold that the superior court correctly concluded that the "activities" Walmart alleged in its NLRB charge were "substantially identical to those in the complaints" filed in state court. Verbatim Report of Proceedings (VRP) (Sept. 13, 2013) at 13. The superior court also correctly concluded that, "[b]y initially pursuing relief with the [NLRB], [Walmart] implicitly recognized

---

[9] The NLRA permits the NLRB to seek a federal court order enjoining an alleged NLRA violation before it finds a violation committed. 29 U.S.C. § 160(j) ("The Board shall have the power, upon issuance of a complaint . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order."). And the NLRB has broad remedial authority "to prevent any person from engaging in any unfair labor practice." 29 U.S.C. § 160(a). Its power "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." 29 U.S.C. § 160(a).

the [NLRB]'s jurisdiction over their claims." VRP (Sept. 13, 2013) at 13. Because Walmart could have brought identical charges before the NLRB and still could do so, we are not required to separately decide whether the NLRB arguably protects or arguably prohibits the UFCW's conduct. *Belknap*, 463 U.S. at 510; *Sears*, 436 U.S. at 194.

### III. THE "DEEPLY ROOTED" LOCAL INTEREST EXCEPTION TO FEDERAL PREEMPTION

There are two exceptions to federal preemption:

(1) when the regulated activity under state law is merely a peripheral concern of the [NLRA]; or (2) when the regulated activity touches an interest so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, there is no inference Congress intended to deprive the states of the power to act.

*Kilb*, 157 Wn. App. at 290; *see also Hume v. American Disposal Co.*, 124 Wn.2d 656, 663-64, 880 P.2d 988 (1994). The Supreme Court in *Garmon* characterized the "deeply rooted" local interest exception as applying to "torts" involving "conduct marked by violence and imminent threats to the public order." *Garmon*, 359 U.S. at 244, 247. But the first exception is not at issue here and we hold that the "deeply rooted" local interest exception does not apply. *Id.* at 244.

Declarations filed by Walmart detailing the UFCW's conduct inside and near Walmart's stores did not allege or document actual violence, threats of violence, or property damage. Walmart concedes that the mere presence of a union member inside a Walmart store was insufficient to qualify as state trespass, but it asserts that if that union member engaged in demonstrations, picketing, and other union-related activities, then that member would have exceeded Walmart's invitation and would have trespassed. Walmart sent repeated notices revoking the UFCW's union member's authority to enter onto Walmart's property for purposes other than shopping. Walmart sought injunctive or declaratory relief in the state action to limit the

UFCW's in-store conduct to "shopping." Walmart's concerns over the manner of the UFCW's picketing and demonstrations, the location of such conduct, and its potential impact to coerce union members overlaps with NLRB's regulatory authority under 29 U.S.C. sections 157 and 158(a)(1).

Unlike the property owner in *Sears*, Walmart had already invoked NLRB's jurisdiction to challenge the coercive and picketing activities and the location in and near Walmart's stores of the alleged trespassing. The legal controversies here are similar although not identical. Walmart's state trespass action sought broad injunctive and declaratory relief under RCW 7.24.020 (declaratory relief) and RCW 7.40.020 (injunctive relief). Unlike in *Sears*, Walmart is not without a legal remedy and could amend its NLRB charge or file another NLRB charge against the UFCW. 29 C.F.R. § 101.22.

Washington courts have not yet expressly ruled on whether trespass is a matter of deeply rooted local interest, although Walmart cites several Washington cases discussing property rights and trespass. Br. of Appellant at 29. And Walmart cites cases from other jurisdictions but none of those cases dealt with state trespass claims. Br. of Appellant at 28-29. We recently held that "even where a clear state public policy exists, a state claim will be preempted where Congress intended to deprive states of the power to act." *Kilb*, 157 Wn. App. at 293; *see Intl. Longshoremen's Ass'n.*, 476 U.S. at 390; *see also Garmon*, 359 U.S. at 244.

The superior court correctly found that Walmart's allegations did not "rise[ ] to the level" of a "deeply rooted" local interest because the UFCW's activities were not violent, intentional torts, or threaten violence.[10] We hold that the "deeply rooted" local interest exception to

---

[10] VRP (Sept. 13, 2013) at 16; *see* CP at 1404-05. We note that Walmart alleged that some of the UFCW's conduct was "threat[ening]." CP at 6 (state court action), CP at 243 (NLRB charge).

preemption does not apply, the NLRA preempts Walmart's state trespass action, and we affirm the trial court's dismissal of Walmart's complaint. *Garmon*, 359 U.S. at 244.

## IV. THE UFCW'S ANTI-SLAPP MOTION TO STRIKE WALMART'S COMPLAINT

The UFCW's anti-SLAPP motion to strike Walmart's trespass complaint was filed under RCW 4.24.525.[11] The superior court did not apply the anti-SLAPP analysis; instead it held that it did not need to reach the UFCW's anti-SLAPP motion because the state court could not exercise jurisdiction over the underlying state trespass action. VRP (Sept. 13, 2013) at 14-15. Because we hold that the NLRA preempts Walmart's state trespass action, we agree that the state court correctly concluded that it could not exercise jurisdiction over the underlying state trespass action and thus it correctly declined to reach the UFCW's anti-SLAPP motion. We affirm the trial court's dismissal.

SUTTON, J.

We concur:

WORSWICK, J.

MELNICK, J.

---

[11] This issue is likely moot because our Supreme Court recently held that RCW 4.24.525, Washington's anti-SLAPP statute is unconstitutional. *Davis v. Cox*, ___ Wn.2d ___, ___ P.3d ___, 2015 WL 3413375, *11 (2015).

13